## SULLIVAN v. INDUSTRIAL ENGINEERING CO. et al.

(Supreme Court, Appellate Division, Third Department.   May 3, 1916.)

1. MASTER AND SERVANT ⬤=⊃405(1)—WORKMAN'S COMPENSATION—DEATH OF SERVANT—CAUSAL CONNECTION—EVIDENCE—SUFFICIENCY.

Evidence in a proceeding for workman's compensation *held* to sustain an award of the State Industrial Commission that the employé came to his death by reason of an accident arising out of and in the course of his employment, although the symptoms exhibited at the time and just before his death were those of delirium tremens and acute alcoholism, in view of the presumptions arising in favor of the award under Workmen's Compensation Act (Consol. Laws, c. 67) § 21.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬤=⊃ 405(1).]

2. MASTER AND SERVANT ⬤=⊃417(7)—AWARD OF COMPENSATION FOR INJURIES—REVIEW—PRESUMPTIONS.

Unexplained absence of the testimony of an attending physician is not substantial evidence, overcoming the statutory presumptions in favor of an award under Workmen's Compensation Act by the Industrial Board.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬤=⊃ 417(7).]

Appeal from State Industrial Commission.

Proceedings for workman's compensation by the dependents of Michael Sullivan, deceased, employé, against the Industrial Engineering Company, employer, and the Casualty Company of America, insurer. From an award of the State Industrial Commission in favor of claimants, the employer and insurer appeal.   Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Lyman A. Spalding, of New York City (Theodore H. Lord, of New York City, of counsel), for appellants.

Egburt E. Woodbury, Atty. Gen. (Harold J. Hinman, Deputy Atty. Gen., and Robert W. Bonynge, Counsel to State Industrial Commission, of New York City), for State Industrial Commission.

WOODWARD, J.   The award should be affirmed.   There is not such a deficiency in the medical proof connecting the injury with the death of the injured employé as to warrant this court in disturbing the determination made by the State Industrial Commission.

Michael Sullivan, whose dependents are the present claimants, was admittedly a time worker in the employ of the Industrial Engineering Company.   On July 25, 1915, he died in the Harlem Hospital, to which he had been admitted five days before.   During his illness at the hospital the injured worker was delirious much of the time, and was probably suffering from delirium tremens.   The immediate cause of death was certified and testified by the attending physicians from the hospital to be "lobar pneumonia, alcoholic poisoning."

The "employer's first report of injury," dated three days before the death, described "how the accident occurred" as follows:

"While pulling centers a piece of 3x8 fell on shoulder.   According to report of fellow workman."

The timekeeper's report added that:

"This information was received from H. Couton.  The injured did not report any injury.  According to H. Couton accident occurred several days before he (Couton) reported it to us."

The uncontradicted testimony of Hypolite Couton and Frank Hicks, fellow employés, before the Commission, showed clearly that late in the afternoon of the Friday before the Tuesday on which he was taken to the Harlem Hospital, Sullivan met with an injury which arose out of and befell him during and by reason of his employment.  With other workmen he was on a scaffold, in the new plant of the Ford Motor Car Company in Long Island City, in the act of taking down the timbers which constituted the "form" in which the concrete of the flooring above had been placed and had "set."  A timber, 3x8 inches in size, whose length was described as from 8 to 16 feet, fell from the ceiling, a distance of 12 or 14 feet, and hit Sullivan on or near the left shoulder.  It also hit the witness Hicks at the same time.  The impact of the timber, made more heavy by the moisture from the concrete, knocked Sullivan down.  Almost immediately he began to complain of severe pains in the shoulder.  He sat down for awhile, and "then got up and tried to work, and he couldn't use the arm very good, because in such cases you have to use both hands."  The next day he reported for work, still complaining of pains.  He remained up to 12 o'clock, and "worked, but he didn't do much."  None of the witnesses obviously available to contradict this testimony, if the same were untrue, was called by the employer or insurance carrier.

The decedent's wife testified that he came home Friday evening and complained of pain, saying that he had been struck by a plank that day.  Home remedies and treatment were administered.  The next morning he returned to work, despite his wife's entreaties.  At 2 o'clock he came home and went to bed.  That night, Sunday, and Monday he was in bed, and continued to complain of pains in the arm, shoulder, and side.  Monday morning a homeopathic physician was called, who gave him some unidentified pills.  On Tuesday the patient was evidently suffering also from some sort of delirium or alcoholism.  The deceased had been in the habit of drinking moderately of beer, but just prior to the accident he does not seem to have been indulging in liquor to any appreciable extent.  As his condition grew worse, his wife despaired of her ability to keep him indoors, although his arm hung limply at his side.  She enlisted the aid of a policeman in obtaining an ambulance, and he was taken to the Harlem Hospital.

The ambulance surgeon testified that:

He found the patient "weak and somewhat irrational," and so ordered his removal to the hospital.  "He had his left arm paralyzed, and he was seeing things about the room, so his family said.  *  *  *  He had a temperature of 100, and I admitted him as delirium tremens and alcoholic neuritis."

Neither Dr. Rosenbluth, the ambulance surgeon, nor Dr. Rofsky, the attending physician, called to the stand by the insurance carrier, had any independent knowledge or recollection of the case.  Their testimony was based wholly upon the hospital records and the notations made by them at the time.  Neither seems to have received any

information, or to have observed any evidence, that the patient had received any blow or injury. The patient told the physician that "his arm was painful and paralyzed"; but he was treated only for the lobar pneumonia and for the effects of the alcoholism or tremens. When his wife visited the hospital, he complained of pain in his shoulder.

Dr. Stiles, the homeopath who prescribed pills on July 19th, was not called to the stand by either side. Dr. Rofsky was cross-examined as to the adequacy of the accident as a producing cause of the conditions found when the patient was admitted to the hospital. For example, the following testimony was given by Dr. Rofsky on cross-examination:

"Q. Supposing I told you that on the 16th of July a plank 3x8 fell on this man's shoulder, somewhat heavy. That could cause a neuritis, with a real paralysis of that arm, if it fell on the proper place. Supposing it did, and caused a paralysis of the nerve, would that cause that condition? A. Yes; it might. Q. And it would be more probable than an alcoholic hemiplegia or a monaplegia? A. Yes. Q. I am supposing that it did occur? A. Yes. Q. And you overlooked it, even though it didn't show any ecchymosis, and you would never think of it? A. Yes; the man would lay in that condition and not complain, and I wouldn't know about it. * * * Q. What was the lobar pneumonia due to? A. Lowered resistance. * * * Q. Assuming the man had sustained an injury resulting in the condition described here, would that have caused this man's death, or contribute to it? A. The injury alone wouldn't; it may contribute."

[1] Upon the whole record, I think the Commission was acting within the evidence and its reasoned impressions of the circumstances and causes of death in reaching the conclusion lucidly expressed by Commissioner Mitchell:

"As a matter of fact, delirium frequently follows an injury. A man need not be a hard drinker to become delirious after an injury. Men who are very moderate drinkers become delirious shortly following an injury. We have cases like this day after day. We have had doctors here, and they agree that a man who is a moderate drinker may become delirious following not a very severe injury, and where the man dies in delirium, and the immediate cause of his death was delirium tremens, and yet the cause of his delirium was the accident—the cause of his death was the accident."

The proof submitted in behalf of the dependent claimants at bar seems fairly to authorize and sustain the award made. The testimony on medical phases leaves something to be desired, but cannot be regarded as insufficient in a substantial sense. Taken in connection with the statutory presumptions arising under section 21 of the Compensation Act, the validity and propriety of the award, as against judicial interference, is clear. There is here involved none of the evidentiary questions passed upon in Carroll v. Knickerbocker Ice Co., 169 App. Div. 450, 155 N. Y. Supp. 1, upon which I retain the views expressed in the dissenting opinion in that case. The canons of proof and presumption laid down in Collins v. Brooklyn Union Gas Co., 156 N. Y. Supp. 957 (decided January, 1916), have here been fully met. That the deceased was in the employ of the insured employer is admitted. That he received serious injury arising "out of and in the course of" that employment, shown by the testimony of two eyewitnesses, is not

contradicted, and is confirmed by the employer's own report.  That this injury and its effects led on directly and in causal relation to the conditions which brought about death is shown by the testimony of the ambulance surgeon, the hospital physician, and the widow, as witnesses to the facts, and by the admissions of the hospital physician, testifying as an expert on cross-examination, after he had been called in behalf of the insurance carrier.  The presumptions created by section 21 are accordingly operative, in the absence of substantial evidence to the contrary.  It would have been preferable that the claimants or the insurance carrier should have made available to the Commission the testimony of Dr. Stiles.  An adjournment was in fact granted to the insurance carrier to enable its representative to do this, but no appearance was made on the adjourned date.  The insurance carrier would have done well to have produced this physician, whose testimony might have been of moment.

[2] The question whether, under the circumstances, the privilege created by section 834 of the Code of Civil Procedure would have barred him from testifying, if called in behalf of the insurance carrier, is not here passed upon.  The Commission would have done well to have held the proceeding open until Dr. Stiles' presence had been procured or his absence explained.  The unexplained absence of Dr. Stiles' testimony, however, can hardly be deemed "substantial evidence," overcoming the statutory presumptions and the testimony actually offered.  Acceleration of death from delirium tremens, through an injury bringing on or aggravating the condition of alcoholism or tremens, has been held to sustain liability for the death as produced by the injury, both in tort actions and under the compensation statute.  McCahill v. New York Transportation Co., 201 N. Y. 221, 94 N. E. 616, 48 L. R. A. (N. S.) 131, Ann. Cas. 1912A, 961; Carroll v. Knickerbocker Ice Co., 169 App. Div. 450, 155 N. Y. Supp. 1; Winters v. New York Herald, 155 N. Y. Supp. 1149.  Therefore, even if the element of lobar pneumonia or weakened resistance, due to the impact of the water-soaked timber, be laid aside, and the theory of death from delirium tremens accepted, the causal connection is sufficient under the authorities, and the award is not made under circumstances giving this court right or reason to reverse or remand.  The Commission was within its discretion in concluding that:

"The injury to the left shoulder was the cause of the delirium tremens and development of lobar pneumonia, and was the cause of his death."

The award should be affirmed.  All concur.