Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claims of GEORGE VAN KEUREN and ETHEL VAN KEUREN, His Wife, Respondents, for Compensation under the Workmen's Compensation Law, for the Injury and Death of said GEORGE VAN KEUREN, *v.* DWIGHT DIVINE & SONS, Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, July 2, 1917.

**Workmen's Compensation Law — injury arising out of and in the course of employment accelerating dormant tuberculosis resulting in death.**

If an employee having a disease receives an injury " arising out of and in the course of employment " which accelerates the disease and causes his death, such death results from such injury and the right to compensa-

tion is secured, even though the disease itself may not have resulted from ·
the injury.

So *held* where the deceased at the time of his injury had dormant tuber-
culosis which was aggravated by the injury so that it became acute and
caused his death.

WOODWARD and SEWELL, JJ., dissented, with opinion.

APPEAL by the defendants, Dwight Divine & Sons and
another, from an award of the State Industrial Commission,
entered in the office of said Commission on the 6th day of
February, 1917.

*Amos H. Stephens [E. Clyde Sherwood and William B. Davis
of counsel], for the appellants.*

*Merton E. Lewis, Attorney-General [E. C. Aiken, Deputy
Attorney-General, of counsel], and Robert W. Bonynge, counsel
to the Commission, for the respondents.*

COCHRANE, J.:

The Commission has found that the deceased at the time
of his injury had dormant tuberculosis which was aggravated
by the injury so that it became acute and caused his death.
These findings are supported by the evidence and are con-
clusive on this court. An injury under the statute is one
" arising out of and in the course of employment and such
disease or infection as may naturally and unavoidably result
therefrom." (Workmen's Compensation Law [Consol. Laws,
chap. 67; Laws of 1914, chap. 41], § 3, subd. 7.) It
seems to me that there is a fallacy in the reasoning of the
opinion of Mr. Justice WOODWARD, in assuming that it must
be shown that death resulted from " such disease or infection
as may naturally and unavoidably result " from the injury,
and in ignoring the other part of the definition of the word
" injury " that it may arise " out of and in the course of employ-
ment " irrespective of whether or not any disease or infection
results therefrom. The claim here is not that tuberculosis
resulted from the injury as would be inferred from the opinion
of Mr. Justice WOODWARD. But the evidence shows quite
clearly and the Commission has found that the disease existed
before the injury which accelerated the disease and shortened
life. The injury caused a hemorrhage which so far as the

evidence discloses the deceased never experienced before or after and there is medical testimony to the effect that such an injury would develop the disease then existing. If an employee has a disease and having the same receives an injury " arising out of and in the course of employment " which accelerates the disease and causes his death, such death results from such injury and the right to compensation is secured even though the disease itself may not have resulted from the injury. The award should be affirmed.

All concurred, except WOODWARD, J., who dissented in an opinion in which SEWELL, J., concurred.

WOODWARD, J. (dissenting):

On the 24th day of December, 1915, George Van Keuren was employed as a cutler by Dwight Divine & Sons, who were engaged as cutlery manufacturers at Ellenville, N. Y. While the evidence is entirely of the hearsay order, it is not disputed that, while engaged in lifting a box of knives weighing some thirty or forty pounds, the employee fell against a vise located upon his workbench, striking his neck just above the collar bone. Mr. Van Keuren was taken to the office of Dr. Divine, who appears to be a member of the employer's firm, where he was examined, and a plaster was placed over the spot indicated as the point of injury and going down over a portion of the chest, and the patient was sent home and directed to refrain from walking or taking any violent exercise. Dr. Divine, who appears to have been a perfectly frank and conscientious witness, testified that the point of contact with the vise showed no abrasion, no discoloration and no indication of pain under pressure, and that the plaster was applied as a reminder to prevent sneezing or coughing, the patient having told her that he had had a hemorrhage, though whether this hemorrhage was before or after the fall does not appear from the evidence. She testified that there was no blood visible at the time of her examination, though she makes no effort to discredit the patient as to his having had a hemorrhage, and no one anywhere suggests that this injury was anything more than a very incidental bump, producing no visible signs. On the seventeenth day of January, about three weeks after the fall, Mr. Van Keuren returned

to work in the factory, apparently entirely well from the injury to this neck, but after working about two days and a half he quit work, complaining of feeling tired, and from that time on he performed no work, and it is conceded that he died in October of pulmonary tuberculosis. The theory of the claimant, found by the State Industrial Commission, is that the death resulted from the injury received by Mr. Van Keuren in the fall, and the only question presented upon this appeal is whether there was any evidence to support this finding of fact. If there is such evidence the fact is conclusively found, and the award must be sustained.

Section 2 of the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1914, chap. 41) provides that the " compensation provided for in this chapter shall be payable for injuries sustained or death incurred by employees engaged in the following hazardous employments," and it is conceded that the claimant's decedent was employed in a hazardous employment. By subdivision 7 of section 3 " injury " and " personal injury " are defined to mean " only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom," while subdivision 8 provides that " 'death,' when mentioned as a basis for the right to compensation means only death resulting from such injury." The language of the statute clearly indicates that it is not every death following a slight injury which is to become a charge against the industry; it is " only death resulting from such injury." And injury is " only  *  *  *  such disease or infection as may naturally and unavoidably result " from such injuries. The clear intent of the statute is that only where the injury results in " such disease or infection as may naturally and unavoidably result therefrom " and death results from " such injury " the compensation becomes payable. To establish the fact that a person has received an accidental injury in a hazardous employment, and that nearly a year thereafter the person so injured has died of tuberculosis, and that there might have been some casual connection between the injuries and the death, does not meet the requirements of the law. It is necessary to show that the injury resulted in producing " such disease or infection as may

naturally and unavoidably result therefrom," and that this disease or infection produced the death. It is a maxim of the common law that " in law the immediate, and not the remote, cause of any event is regarded," or, as Lord Bacon quaintly puts it, " It were infinite for the law to judge the causes of causes, and their impulsions one of another; therefore, it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." (Bacon's Maxims, reg. 1.)     But here, we believe, the statute fairly construed permits us to look to the cause of the cause of death, and to determine the liability, not from the immediate injury, but from the more remote results of such injury.

There is absolutely no dispute that the cause of death was pulmonary tuberculosis; without tuberculosis there was no sufficient cause of death.     The claimant's decedent concededly recovered from the immediate injury, and went back to his work within three weeks; it was obviously an injury of such slight importance that it would have passed with only incidental mention, except for the fact of the subsequent death of the injured person, and the liability of the insurance carriers depends upon whether the injury produced " such disease or infection " as tuberculosis, and whether such disease or infection was such as may " naturally and unavoidably result " from the injury.     Mere opinions that the injury might have had some incidental effect upon a pre-existing disease does not meet the situation; there must be evidence that there were " accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom," and a disease or infection which already exists may not be said to " naturally and unavoidably result " from an injury subsequently sustained.     It may well be, as we have suggested in *Sullivan* v. *Industrial Engineering Co*. (173 App. Div. 65, 69), that with the aid of the presumptions authorized by section 21 of the Workmen's Compensation Law little evidence is needed to establish the right of the claimant, but it is still necessary, we assume, to have some evidence to bring the case within the language and fair intent of the statute, and

Third Department, July, 1917.        [Vol. 179.

where the award is challenged, it is the duty of this court to determine the question of law whether the record affords such evidence. In the light of this discussion, let us examine the testimony that we may discover whether there is any proof that the decedent died as the result of any injury which produced " such disease or infection as may naturally and unavoidably result therefrom."

Decedent's own family testified generally to the effect that he had been in seeming good health, and that he worked every day and had had no occasion to employ a physician or to refrain from work, though it appears that shortly after the accident the decedent changed from the care of Dr. Divine, who had originally treated him, to Dr. Rapp, and gave as his reason therefor that Dr. Rapp was his doctor. After this family testimony, which found some support in that of the employer's foreman, Dr. Divine was called. She testified that on the day of the accident she was notified by telephone that the decedent had been injured and that he would be brought to her office; that he came and complained of an injury which he located; that he gave the history of the accident; that " he told me he had slipped and fallen, striking his neck on the point of the vise, right above the collar bone, and complained of some pain there;" that " his face was clear and he seemed fairly strong, but he was pale." She testified further that he gave a history of having expectorated a little blood, " and I was anxious to find out where that blood came from. I found no blood in his mouth, and there was no external bleeding point, but I was afraid he might strain it, and I put a plaster there so as not to cause or bring on a hemorrhage." She definitely located the point of the injury as " about an inch over the medial line and two-thirds of an inch above the clavicle;" that there was no laceration, no discoloration, and that the most serious symptom she discovered was the alleged spitting of blood; that there was nothing apparent in the injury which would have prevented him from working, but that she had advised him to go home and to refrain from working or walking until she could be sure that there would be no further hemorrhage. This witness further testified to her watching the developments in this case, of discovering a sub-normal temperature in the morning

and an elevated temperature in the afternoon, and that she finally reached the conclusion that the patient was suffering from tuberculosis; that he was in an advanced stage of the disease, and that she found these abnormal conditions immediately after the accident; the same night. She was asked: " If he received a blow on the collar bone, as he gave you a history at that time, would that affect his lungs in any way; such a blow as he gave you a history of and the injury you saw at that time, would you think that could affect the lungs?" She answered, " I don't see how it could," and while frankly admitting that she did not think him weak enough to have fallen by reason of the turbercular condition, she held to the opinion that the injuries described to her, and which she found in her examination, had nothing to do with the death of her patient months later. No evidence can be found in her testimony which gives any support to the theory that this injury had anything to do with producing the tubercular condition which she says she discovered immediately on taking charge of the case, and which her further experience in the case justified. She admitted that she knew nothing of the decedent prior to the accident, and that " from what I guess at from the history of the case, and my examination; that is everything I know."

The next witness examined was Dr. Wicklow, who testified that he saw the decedent between the twentieth and twenty-seventh days of January; that decedent was sent to his office by Dr. Rapp, who then had charge of the case, for the purpose of having his diagnosis confirmed, and that he did not hesitate to pronounce the case to be tuberculosis; that he found it in an advanced stage. Various hypothetical questions were asked of this witness, in which it was assumed that the injury produced the hemorrhage, and finally resulted in his answering: "Assuming the hemorrhage was the result of the blow, I cannot help but think that it might have" had something to do with the condition which he found in January following the accident. But he likewise answered the question, " From the condition of the man, as you saw him in January, isn't it very probable that he might have had a hemorrhage without any blow?" by saying: " Sure, possibly." He had already testified that the hemorrhage could come on without a blow,

and that if decedent had a hemorrhage without a blow, that that would aggravate the condition. He had also expressed the opinion that the decedent had tuberculosis at the time of the alleged injury. He was asked: "From the condition you found him in January, 1916, do you believe that a slight blow above the clavicle could have rendered and put the right lung in the condition you found him in?" and he answered: "Not without having tuberculosis prior to the accident." It appears conclusively that there was no evidence from this witness that tuberculosis was "such disease or infection as may naturally and unavoidably result" from the injury complained of; there was no evidence that the hemorrhage was the result of the injury; for all that appears he may have had a hemorrhage and fallen, and this witness testified that the hemorrhage might come on from the tuberculosis becoming acute.

Dr. H. Van Hoevenberg, the next witness, who had merely been called on the day of the trial, and who listened to some of the testimony and formed his opinions from such testimony, testified. He was asked: "Assuming a man twenty-six years of age who was found leaning over his work bench on December 24, head down on his chest, and when the fellow employees got to him he advised them that he had slipped on the floor and struck against a vise; that he was spitting blood; that he was taken to the office of Dr. Divine who loosened his shirt and that Van Keuren indicated to her the site of injury was two-thirds of an inch above the clavicle; she examined that, finding no lacerations, or bruises, or discoloration; that she put a plaster on it, sent him home; that he returned to work January 17, and worked two and one-half days and left, went back home and gradually got weaker so that in February he was confined to the house, and was so confined until October 7th when he died of tuberculosis; that his ailment was diagnosed some time before February as tuberculosis; that it was in rather an advanced stage; that he had a brother die of it at the age of eighteen; in your opinion would such a blow as he indicated have caused or contributed to, of itself, the tubercular condition which resulted in his death in October?" He answered: "You mean as a cause of the tubercular condition?" The question was restated:

" As a cause directly or indirectly to his tubercular condition which resulted in his death; the blow itself which, as the doctor testified, left no laceration, bruise or discoloration? " He answered: " As tuberculosis is caused by a germ, I do not see how it is possible that any blow would cause tuberculosis." Asked, " Wouldn't a blow make tuberculosis flare up, or make it exciting? " The witness answered: " It is possible if the man was in an advanced stage, but the gentleman asks me whether it would be a cause." Counsel then stated: " I incorporated in my question the blow, as he stated it was two-thirds of an inch above the clavicle and still there was no evidence of an injury there. He had a hemorrhage. Would that blow, if there was a blow; it must have been slight or it would have caused some evidence there; with such a history as that, do you think that such a blow would have contributed to his death or hastened it? " He answered: " Under certain conditions, if the lung were in an advanced stage of tuberculosis, a blow might cause a hemorrhage which would possibly hasten the action of the tuberculosis." " Q. Would such a blow as this, two-thirds of an inch above the clavicle, a blow which didn't leave any marks, would that hasten it? A. It doesn't seem to me as though it would. Q. You have listened to the testimony and know the history of the case. In your opinion, did that man have the hemorrhage before the fall or after the fall? A. I think it is possible he had it when he fell. He might have had the hemorrhage which caused him to feel weak. Q. Isn't that your opinion from the history of the case? A. As I gather it, from the condition the lungs were in, I think that might have been the cause of his fall." The witness went to the extent of saying that the hemorrhage might come on thus suddenly; that there always had to be a first time for a hemorrhage,. and that while the man might appear normal and go to his work, he would not be in good condition with his lungs in the condition in which they were found at the time of and immediately subsequent to the injury. Here the testimony clearly negatives the proposition which it is necessary to establish; this witness testified positively that a blow could not produce tuberculosis; that it was a germ disease and could not be produced in any other way.

The next witness, Dr. Rapp, who attended the decedent

after Dr. Divine, was asked the same hypothetical question in substance as had been propounded to the other expert witnesses, and his reply was that he thought the blow would have some connection with the subsequent condition; that it would " aggravate any existing tubercular lesion." Asked further, " Might it not induce an acute tuberculosis? " He answered, " Yes, sir." This witness, the village health officer, produced a copy of his report to the State Health Department, containing no new information, testified that he found no injury to his patient and that he treated him for pulmonary tuberculosis, and that the case was in " a moderately advanced stage " when it came to him, in January following the accident on the twenty-fourth of December.

This is all the evidence in the case tending to show that the decedent came to his death by means of this trifling injury. The uncontradicted evidence is that death resulted from pulmonary tuberculosis, and that this specific and well-defined disease could not be produced by a blow such as was described by the decedent himself. There was not a suggestion in the evidence that this disease " may naturally and unavoidably result " from the injury alleged, and without such evidence it is impossible to establish that death resulted from such injury, as no one pretends that the decedent was killed by the accident. It was only upon the theory that the injury, trifling in itself, produced the tuberculosis that there could be any pretense of justification for this award, and, as we have seen, no one has attempted to say that this injury could by any possibility produce the disease; much less to say that it might " naturally and unavoidably result therefrom." No one testifies positively even that it might " naturally and unavoidably result " in any serious harm to the patient, unless he was in such an advanced stage of tuberculosis as to make any disturbance of his daily life of importance; all the opinions are based upon the proposition that the decedent was well advanced in the disease before the accident happened, and not one of them pretends to say that he can determine with reasonable certainty that the injury had anything whatever to do with the conditions producing the death, while there is positive and uncontradicted testimony that the disease could not have been produced by

the accident. There was, therefore, no warrant in law for the claims presented, and the awards may not stand.

The awards appealed from should be reversed, and the claims dismissed.

SEWELL, J., concurred.

Award affirmed.