PINYON QUEEN MINING CO. et al. v. INDUSTRIAL
COMMISSON OF UTAH.

No. 3744.    Decided January 28, 1922.    (204 Pac. 323.)

1.   MASTER AND SERVANT—NOTICE OF APPLICATION FOR REHEARING
     IN COMPENSATION PROCEEDING UNNECESSARY. Under the statute
     providing that the Industrial Commission shall not be bound
     by any technical or formal rules of procedure other than in
     the statute provided, notice of the hearing on a petition for
     rehearing is not required where notice of the second hearing
     is given in case the rehearing is granted.

2.   MASTER AND SERVANT—FINDING ON EVIDENCE IN COMPENSATION
     PROCEEDINGS CONCLUSIVE. Where there is any substantial evi-
     dence supporting an award under the Workmen's Compensa-
     tion Act, the determination of questions of fact by the Indus-
     trial Commission is conclusive, and the Supreme Court on
     certiorari will not pass on the weight of the evidence.

3.   MASTER AND SERVANT—COMPENSATION RECOVERABLE FOR ENTIRE
     DISABILITY FROM DISEASE AGGRAVATED BY "PERSONAL INJURY."
     Under Comp. Laws 1917, § 3112, as amended by Laws 1919,
     c. 63, providing that the words "personal injury by accident
     arising out of or in the course of employment" shall not in-
     clude a disease except as it shall result from the injury, where

a dormant disease was revived or accelerated by an accidental injury and disability resulted, the injured workman was entitled to compensation for the entire period of his disability, though prolonged because of the disease.

4.  MASTER AND SERVANT—COMPENSATION CLAIMANT'S NEGLIGENCE IN NOT SEEKING MEDICAL TREATMENT FOR DISEASE REVIVED QUESTION OF FACT.  Where an injured workman and his employer's physician who treated him both knew that he had previously had syphilis, but the physician did not associate such disease with the injury until a test was applied, and the specific remedy for the disease was then administered and a cure affected, and it did not appear that the injured workman knew that the disease had been dormant in his system and that it was revived into activity by the injury or that a remedy had been discovered that would quickly cure it, whether he was guilty of willful neglect or culpable negligence in failing to sooner procure medical treatment was a question of fact for the Industrial Commission.

Original certiorari proceeding by the Pinyon Queen Mining Company and another against the Industrial Commission to annul an award to Matt Finn of compensation for injuries.

AWARD AFFIRMED.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, for plaintiffs.

*Herbert Van Dam, Jr.,* of Salt Lake City, for defendant and Matt Finn, applicant for compensation.

WEBER, J.

Plaintiffs have instituted proceedings for certiorari in this court for the purpose of having annulled the award made by the Industrial Commission for compensation to one Matt Finn, who was injured on April 7, 1921, while in the employ of the Pinyon Queen Mining Company.  After the award was made a rehearing was granted on application of the state insurance fund.  Further evidence was thereupon taken at

the second hearing, upon which the award was affirmed and the findings modified. Counsel for applicant now moves that the record and proceedings returned and certified by the Industrial Commission subsequent to the award made September 19, 1921, be stricken and disregarded for the reason that no notice of application for rehearing was ever served upon the applicant or his counsel, and no opportunity was ever given applicant to be heard respecting such motion. In support of this motion counsel say they cannot see where any harm could come to either employer or employé in requiring that each side of the controversy before the Commission be kept informed of proceedings before it, and that "employers would be quick to complain of hearings before the Commission on applications for compensation, on applications for rehearing, and on application for lump sum payments, etc., if such hearings were held without notice to them or opportunity to be heard."

So far as applications for rehearing are concerned, it would be a useless and cumbersome proceeding to have the parties appear for a special hearing on the motion for rehearing. There is no formal hearing on a motion for rehearing and when a petition for rehearing is pending it is properly disposed of ex parte. If denied, the adverse party has no cause for complaint, and, if granted, the parties are given notice of the rehearing, as was done in the instant case, by the Commission. The statute provides that the Industrial Commission shall not be bound by any technical or formal rules of procedure other than in the statute provided. Notice of the hearing on the petition for rehearing is not provided by the statute and no valid reason has been given why such notice should be required by the Commission. After the rehearing was granted, applicant was given notice of the second hearing, and thus all his rights were fully protected.

An examination of the transcript of the evidence produced at both hearings shows that there is evidence tending to support the findings objected to and also evidence to the contrary. When there is any substantial evidence supporting

an award the determination of questions of fact by the Industrial Commission is conclusive, and, as we have repeatedly held, this court will not in such cases pass upon the weight of the evidence.   It is therefore unnecessary to      2 review the testimony in this case.   All the essential facts are stated in the findings of the Commission.   Omitting what was found as to employment of the applicant by the mining company and the wages paid him, the Commission's findings were as follows:

"That on the 7th day of April, 1921, the engineer of the defendant sent a note into the mine, where the applicant was working, requesting him and his partner to come out of the mine and on top to assist in recovering a mine car that had gone over the top.   A rope was tied to the mine car, the engineer and the applicant's partner were pulling on it, and the applicant was below pushing on the car, when his foot slipped, the car raised up, and the applicant fell back with the weight of the car on his right arm, and twisted it.   The applicant indicated to his partner at the time of the accident that he had turned his right arm by saying, 'Wait a minute; I hurt my arm.'   This happened about 9 o'clock p. m., and about 2½ hours after the applicant started to work.   After the accident the applicant went back into the mine and worked about an hour, came up out of the mine, ate part of his supper, and noticed considerable swelling in his right arm about the elbow, and suffered intense pain and was obliged to discontinue work.   The next day he saw the foreman, who told him to see Dr. Bailey.   However, the applicant went to see Dr. Laker at Eureka.   While in Dr. Laker's office the applicant rolled up his sleeve and told the doctor that he had hurt his arm, and at that time his arm was badly swollen.   For 3 years prior to the accident the applicant was able to perform his regular duties as a miner, and at no time for 3 years prior to the accident was applicant physically unable to do his daily work.

"That the applicant admits in his testimony that at the time of the accident, and for some time prior to the accident, he was afflicted with an organic disease known as syphilis, but that his syphilitic condition never interfered in any way with his employment; that he worked for the defendant satisfactorily prior to the accident and was physically able to perform his duties as a miner for the defendant; that the character and extent of the injury so received by the applicant was such that, if unaccompanied by said disease, applicant would have recovered therefrom within 6 weeks at the outside; that, if the applicant had received prompt and proper treatment, the effect thereof on said injury and the

combined effect of the two would not have resulted in a total disability in excess of the 10 weeks for which applicant had already received compensation; that both the applicant and the attending physician previously had known that applicant was infected with such disease, but was not given treatment for said disease, but thereafter, on or about July 1st, applicant for the first time commenced receiving treatment for the disease, and his arm trouble cleared up within 60 days, so that applicant was able to and did resume work on September 1, 1921."

As part of its conclusions, the Commission found:

"In view of the foregoing findings, the Commission concludes that on the 7th day of April, 1921, the applicant had 'a pre-existing constitutional disease known as syphilis, which, being dormant, left his ability to perform the arduous work of a miner for which he was hired, unimpaired, and that, because of the nature of the accident being sufficiently severe to accelerate this condition, the applicant was deprived of his usual capacity for work.' While we find in finding No. 3. that the injury was such that, if unaccompanied by said disease, the applicant would have recovered therefrom within six weeks at the outside, the Commission concludes that the employer takes a man as he is, and therefore should pay compensation for the full period of disability suffered by reason of the accident sustained on the 7th day of April, 1921, without considering the syphilitic condition which no doubt prolonged his disability period. * * *"

Plaintiffs contend that the conclusion of the Commission awarding applicant full compensation for the period of disability suffered by reason of the accident, without considering the syphilitic condition, is erroneous.

The question involved here may be stated as being:

"If an existing disease is aggravated by accidental injury, must compensation be paid for the resulting incapacity?"

What courts have held with uniformity is stated in Kaiser's (Corpus Juris) pamphlet on Workmen's Compensation Acts, at page 69, § 58, as follows:

"Acceleration of a diseased bodily condition may constitute a personal injury, and an injury may be by accident, although it would not have been sustained by a perfectly healthy individual. So death may be regarded as having been caused by an injury, although there was a diseased condition prior to the injury without which death would not have ensued, and partial or total incapacity may spring from, and be attributable to, the injury, where undeveloped and dangerous physical conditions are set in

motion producing such a result as well as where there is a dislo-
cation or dismemberment, or an internal organic change capable
of being exactly located." (Numerous cases are cited by the author
fully sustaining the above text.)

The opinion generally expressed by the court is that stated
in *Crowley's Case*, 223 Mass. 288, 111 N. E. 786, as follows:

"The material evidence before the arbitration committee, sub-
mitted without the introduction of further testimony to the Indus-
trial Accident Board upon review warranted the findings that the
employé had 'a pre-existing constitutional disease, known as
syphilis,' which, being dormant, left his ability to perform the
arduous work for which he was hired unimpaired, and that, be-
cause of the nature of the accident arising out of and in the
course of employment, his nervous system suffered a shock suffi-
ciently severe to aggravate and accelerate this condition, until
general paralysis or insanity resulted depriving him of all ca-
pacity for work in the future. The statute prescribes no standard
of fitness to which the employé must conform, and compensation
is not based on any implied warranty of perfect health or of im-
munity from latent and unknown tendencies to disease which may
develop into positive ailments if incited to activity through any
cause originating in the performance of the work for which he is
hired. What the Legislature might have said is one thing; what
it has said is quite another thing; and in the application of the
statute the cause of partial or total incapacity may spring from
and be attributable to the injury just as much where undeveloped
and dangerous physical conditions are set in motion producing
such result, as where it follows directly from dislocations or dis-
memberments or from internal organic changes capable of being
exactly located."

For other cases see notations to L. R. A. 1916A., pp. 33
and 231; L. R. A. 1917D, 109; L. R. A. 1918F, 869; Brad-
bury's Work, Comp. Cases (3d Ed.) 566. See, also, annota-
tions beginning at page 319 of Ann. Cas. 1918B, and, for
English cases, page 322, Id.

The only state in which a different rule has been adopted
is California, where it has been held by the Industrial Acci-
dent Commission that compensation should be awarded only
for the longest period of disability for which a normal per-
son sustaining accidental injury would reasonably be dis-
abled. However, this ruling is the result of and is com-
pelled by a statute which provides:

"The term 'injury,' as used in this act, shall include any injury or disease arising out of the employment. In case of aggravation of any disease existing prior to such injury, the compensation shall be allowed only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributed to the injury." St. Cal. 1917, c. 586, § 3.

Plaintiffs state that but few workmen's compensation laws contain the provision found in the Utah statute, and therefore the decisions from the commissions and courts of other states allowing compensation in cases of accidents which aggravate an existing disease are neither binding nor helpful to this court in arriving at a proper construction or interpretation of the provision of our statute which reads:

"The words 'personal injury by accident arising out of or in the course of employment' shall include an injury caused by the willful act of a third person directed against an employé because of his employment. They shall not include a disease except as it shall result from the injury." Comp. Laws Utah 1917, § 3112, as amended by chapter 63, Laws Utah, 1919.

In Indiana the statutory definition of "personal injury" as used in the Workmen's Compensation Law of that state is in substance that of Utah, and reads as follows:

" 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except as it shall result from the injury." Acts 1915, c. 106, pt. 5, § 76(d), p. 416.

This statute has been construed by the Appellate Court of Indiana, and it has been repeatedly held by that court that, when a disease is vivified or accelerated by accidental injury, and disability results, the injured workman is entitled to compensation for the entire period during which he is disabled, though the period of disability is prolonged because of the disease.

In Re Bowers, 65 Ind. App. 128, 133, 116 N. E. 842, 843, the court says:

"Where one is injured through the negligence of another, and the former is afflicted with or predisposed to some disease, and the injury materially aggravates or incites the disease and accelerates it to the stage of disability or to a fatal termination, and the forces which contribute, each materially, to produce such disability or death, are the disease and its aggravation or acceleration by

the injury, the victim or his representative has his remedy in cases governed by the common law.  [Citing many cases.]

"Likewise the courts, consistent with the theory of workmen's compensation acts, hold with practical uniformity that, where an employé afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact existed is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation acts. See the following: *In re Madden*, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000; *In re Brightman*, 220 Mass. 17, 107 N. E. 527, L. R. A. 1916A, 321, and note at page 293; *In re Fisher*, 220 Mass. 581, 108 N. E. 361; *Crowley* v. *City*, 223 Mass. 288, 111 N. E. 786; *Ramlow* v. *Moon Lake Ice Co.* (Mich.) 158 N. W. 1027, L. R. A. 1916F, 955; *Hills* v. *Oval Dish Co.* (Mich.) 158 N. W. 214; *City of Milwaukee* v. *Industrial Comm.*, 160 Wis. 238, 151 N. W. 247; *Hartz* v. *Hartford, etc., Co.*, 90 Conn. 539, 97 Atl. 1020; *Robbins* v. *Original, etc., Co.* (Mich.) 157 N. W. 437; *Grove* v. *Michigan, etc., Co.*, 184 Mich. 449, 151 N. W. 554; *Hurley* v. *Selden-Breck Co.* (Mich.) 159 N. W. 311; *Winter* v. *Atkinson, etc., Co.*, 88 N. J. Law, 401, 96 Atl. 360; *Mazzarisi* v. *Ward*, 170 App. Div. 868, 156 N. Y. Supp. 964; *Sullivan* v. *Industrial, etc., Co.*, 173 App. Div. 65, 158 N. Y. Supp. 970; Bradbury, Workmen's Compensation Law, p. 386."

In *Indianapolis Abbatoir Co.* v. *Coleman*, 65 Ind. App. 369, 117 N. E. 502, it was contended that Coleman was afflicted with syphilis at the time he sustained an injury by accident. After referring to the evidence, which was conflicting, the court says:

"Again the court may have found that he was so afflicted at the time of such accident, but that such disease was latent, and that such accident accelerated it to the stage of disability. Under such facts, the existence of such disease would not of itself prevent a recovery."

Again, it is further said in the course of the opinion:

"Appellant finally contends that the doctrine to be applied under the facts of this case is one of degree:  (1) Degree of disability prior to the injury;  (2) degree of disability caused entirely by the

injury; (3) degree of disability caused entirely by the disease; (4) degree of disability which might have resulted from the disease alone. We cannot concur in this contention. There is no provision for the application of such a doctrine in the Workmen's Compensation Act * * * of this state, and the courts of other jurisdictions have refused to recognize it under similar acts"—citing cases.

Other Indiana cases upon this subject are: *I. C. C. & M. Co.* v. *Calvert et al.*, 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *Retmier* v. *Cruse*, 67 Ind. App. 192, 119 N. E. 32; *Puritan Bed Springs Co.* v. *Wolfe*, 68 Ind. App. 330, 120 N. E. 417; *Miller* v. *Beil*, (Ind. App.) 129 N. E. 493; *Republic I. & S. Co.* v. *Markiowicz* (Ind. App.) 129 N. E. 710; *Utilities Co.* v. *Herr* (Ind. App.) 132 N. E. 262.

The statute of Iowa relating to the subject under consideration is substantially that of Utah, although in that state the employé is entitled to compensation for personal injury arising out of and in the course of his employment, a more comprehensive term than "personal injury by accident." Referring to the words "injury" and "personal injury," the Iowa statute (Code Supp. 1913, § 2477m16) says:

"They shall not include a disease except as it shall result from the injury."

In *Hanson* v. *Dickinson*, 188 Iowa, 728, 176 N. W. 823, Hanson, the employé, had his knee injured, and the injury "lighted up" or accelerated gonorrhea, which had been dormant in his system for six years. The court held that the manifest design of the General Assembly in providing that the term "personal injuries" should not include a disease was to eliminate occupational diseases. Such obviously was also the purpose of the Legislature of this state when disease was excluded in the definition of injury by accident. In *Hanson* v. *Dickinson*, supra, the court aptly expressed a thought which is here applicable:

"The claim is not based on the disease, but on what the bruise did to the disease."

In substance the same as that of Utah is the statute of Louisiana (Act No. 20 of 1914, § 39) which provides:

"That the terms 'injury' and 'personal injuries' shall include

only injuries by violence to the physical· structure of the body and such diseases or infections as naturally result therefrom.   The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

As shown by the syllabus in *Behan* v. *Honor*, 143 La. 348, 78 South. 589, L. R. A. 1918F, p. 862, the Supreme Court of Louisiana held:

"The fact that an employé, injured in performing service arising out of and incidental to his employment in the course of his employer's occupation, was already afflicted with a dormant disease that might some day have produced physical disability is no reason why the employé should not be allowed compensation, under the employers' liability statute, for the injury which, added to the disease, superinduced physical disability."

And in the opinion is is· said:

"The proof goes no further, in support of the defense .of this suit, than to show that the plaintiff might, and perhaps would, at some time, have become disabled by the disease that was lurking in his system, even if the accident complained of had not happened. * * * The evidence leaves no doubt that the plaintiff's physical disability resulting from the accident is worse than it would be if he had not been diseased at the time of the accident. But the accident was, none the less, the proximate cause of the present disability."

The syllabus above set out and the quotation from the text of the opinion are quoted and approved in *Fox* v. *U. C. & O. P. Co.*, 147 La. 866, 86 South. 311.

Plaintiffs rely on *Borgsted* v. *Shults Bread Co.*, 180 App. Div. 229, 167 N. Y. Supp. 647.  In that case plaintiff was the driver of a bakery wagon, and ·accidentally slipped in getting off his wagon and fell to the ground, sustaining a fracture of the right tibia, the healing of which was prolonged by reason of his pre-existing syphilitic condition which, aggravated by the accident, resulted in the loss of sight.   The court held that, while entitled to compensation for the fracture, though the injury may have been prolonged in results because of degeneracy due to syphilis, still he was not entitled to compensation for permanent disability due to the loss of his eyesight, which loss was the result of syphilis, but had no causal connection with the accident.

The *Borgsted Case* is thus distinguishable from other New

York cases, but in so far is it departs from the general doctrine of the cases that we have cited it is isolated and finds no support in the decisions of the courts of New York or those of any other state.

In *Van Keuren* v. *Dwight, etc., Co.,* 179 App. Div. 509, 165 N. Y. Supp. 1049, affirmed in 222 N. Y. 648, 119 N. E. 1083, it is held that, if an employé has a disease, and, having the same, receives an injury arising out of and in the course of his employment, which injury accelerates the disease and causes his death, such death results from such injury, and the right to compensation is secured even though the disease itself may not have resulted from the injury.

In *Finkelday* v. *Heide,* 193 App. Div. 338, 183 N. Y. Supp. 912, affirmed in 230 N. Y. 598, 130 N. E. 909, the claimant sustained a fracture of his wrist. At the time of the accident he was infected with syphilis, and shortly thereafter developed general paresis. It was claimed that the award should be modified so as to eliminate compensation for the disease of paresis. It was held that the fact that claimant would at a later period have been afflicted with the disease of paresis as the result of syphilis did not militate against the award.

It is not necessary "to this claim to argue that the disease or infection from which the claimant suffers did not naturally and unavoidably result from the injury. It is sufficient if the disease existed at the time of the injury and was thereby accelerated to such an extent as to impair the earning capacity."

It is argued by plaintiffs that, if the law be held to be that the acceleration or aggravation or prolongation of a disease by accidental injury sustained in the course of or arising out of the employment is compensable under the Workmen's Compensation Law, the result would inevitably be that the industries generally would soon insist that all applicants for work should pass a rigid physical examination, and that needy workmen suffering from any form of ailment or disease would thus be deprived of full and equal opportunity of obtaining employment. An answer to this argument is found in *Madden's Case,* 222 Mass. 487-496, 111 N. E. 379, L. R. A. 1916D, 1000:

"It is argued that grave economic consequences of far-reaching

Certiorari.  Award affirmed

effect may follow from the act as thus construed.  It is said that persons not in good health may be altogether excluded from employment to their severe hardship, while the cost of conducting commercial and industrial enterprises may become prohibitively large, all to the detriment of the general welfare and of the financial resources of the commonwealth.  These considerations are of great public moment.  But these factors relate to legislative questions and arguments founded on them are distinctly legislative arguments.  They may be entitled to attention and deliberation at the hands of the legislative department of the government.  In the present forum they cannot have decisive significance, even if it were plain that the enumerated consequences were inevitable.  The function of the judicial department of the government is simply to determine whether an act is within the power vested by the Constitution in' the Legislature, and then to enforce it according to its true meaning in cases as they arise."

Another answer is that in all those states where rulings such as those by the Industrial Commission in the present case have been upheld by the courts the predictions 3 of dire disaster to workmen have not eventuated.  Industries in those states are still employing men as they present themselves for work, and those with dormant diseases, with unsound lungs, weak hearts, and impure blood are still working by the side of those without disease or physical weakness of any kind.

The third proposition advanced by plaintiffs is that for such prolongation or extension of his disability as is due to applicant's failure to seek prompt medical aid for a known syphilitic condition from which he was still suffering, and which yielded so quickly to proper treatment, the applicant, and not the industry, must bear the consequences.  Counsel cite *Lesh* v. *Ill. Steel Co.*, 163 Wis. 124, 157 N. W. 539, L. R. A. 1916E, 105, and quote therefrom as follows:

"The proposition that an applicant, under the provisions of this humane law, may create, continue, or even increase his disability by his willful, unreasonable, and negligent conduct, claim compensation from his employer for his disability so caused, and thereby cast the burden of his wrongful act upon society in general, is not only utterly repugnant to all principles of law, but is abhorrent to that sense of justice common to all mankind."

No doubt the workman who is injured by accident in the course of his employment may not demand compensation for

disability prolonged by his willful neglect. Was there willful neglect or culpable negligence in this case? A company physician had treated the applicant in 1917 for syphilis, but the same physician was called to treat the applicant's injury, and this doctor did not associate the syphilitic condition known to him with the alleged injury. It was only later, when the Wasserman test was applied, that applicant's reviving syphilitic condition was noticed or considered. The specific remedy for the disease was then administered and a cure effected. It is not shown that the applicant knew that syphilis had been dormant for three years in his system, that he knew that it was revived into activity by the injury to his arm, or that he knew that a remedy had been discovered that would quickly cure the dread disease. Can it be said as a matter of law that the prolongation of the disease was due to the willful, unreasonable, and negligent conduct of the applicant? We think not. Whether there was such a willful neglect or culpable negligence on his part that the applicant should be deemed blamable for the prolongation of his injury was an issue of fact for the Commission to determine, and having by its award decided that applicant is not chargeable with willful neglect and unreasonable conduct in failing sooner to procure medical treatment, the Commission's decision on that issue must be held to be final and conclusive.

The award is affirmed.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.

FRICK, J. I concur. I desire to state, however, that I do so only in deference to the authorities cited by Mr. Justice WEBER. Were it not for those decisions, in which statutes similar to ours are passed on, I should feel constrained to hold that in view of the language of our statute that the "personal injury" for which the employé shall be compensated "shall not include a disease in any form except as it shall result from the injury," necessarily excludes every dis-

ease except the one which is the direct result of the injury complained of.  To my mind there is no escape from the conclusion that the disease in this case did not "result from the injury," and is therefore necessarily excluded.   To hold otherwise necessarily results in ignoring the explicit language of the statute and leaves the matter to be determined under the law applicable to injuries which were caused through the negligence of the employer.  Where that was the case, however, the employé could recover nothing if his own negligence either caused or directly contributed to the injury.  The employer was thus compelled to compensate for the consequences of his own negligence only, while under the decision as it stands he may be compelled not only to compensate the employé for the consequences of his own negligence, but also for the consequences of any disease which may have aggravated the injury and the consequences of which continue indefinitely.  In view that under the Industrial Act contributory negligence is not a defense, the Legislature, it seems to me, intended to prevent a recovery for the consequences of any disease which manifestly did not "result from the injury."  I concede, however, that the matter of adjusting and fixing compensation under the Industrial Act is not always free from difficulty, and therefore I cheerfully yield to the judgment of my Associates.

Notwithstanding the suggestion of Mr. Justice WEBER to the contrary, I am, nevertheless, strongly of the opinion that the construction given the statute, if adhered to, will eventually result in compelling applicants for employment to submit to physical examination and will thus exclude those who can least afford it because they cannot pass the examinations.  While the industries of the state will compensate the employés for loss through accidental injuries, they, in my judgment, as a matter of self-protection, will refuse to make compensation to those who suffer loss resulting from diseases.