**LUMBERMEN'S MUT. CASUALTY CO. v. BRANHAM, Deputy Commissioner of United States Employees Compensation Commission, et al.**

No. 2547.

District Court, D. Maryland.

Dec. 8, 1942.

Due, Nickerson & Whiteford, Palmer R. Nickerson, and John H. Fringer Jr., all of Baltimore, Md., for plaintiff.

Calvin E. Cohen, of Baltimore, Md., for Stanislawa Szynkielewski.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for Deputy Commissioner.

COLEMAN, District Judge.

This case arises upon a petition brought by the Lumbermen's Mutual Casualty Company, insurance carrier for the Ocean Terminal Stevedoring Corporation, to review and set aside an award of the Deputy Commissioner of the United States Employees' Compensation Commission appointed pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation

142

Act, 33 U.S.C.A. §§ 901–950, incl., this award being made to the mother of a deceased employee of the above named stevedoring company.

The jurisdiction of the Deputy Commissioner in this case is not questioned, nor is the amount of the award, but merely whether the award is in accordance with law. If it is not, the Longshoremen's and Harbor Workers' Compensation Act expressly provides, 33 U.S.C.A. § 921(b), that it may be suspended or set aside in whole or in part. The insurance company contends that the award is not in accordance with law in that there was no legally sufficient evidence produced before the Deputy Commissioner indicating causal connection between the injury which the employee suffered in the course of his employment and his death. This is denied by counsel for both the mother of the deceased employee and the Deputy Commissioner.

The Deputy Commissioner has filed in the case his findings of fact upon which his award is based. These findings are not disputed in so far as they relate to the occurrence and character of the injury to the deceased employee, the medical and surgical treatment which he received for this injury and the manner of his death. Somewhat summarized, these findings are as follows: On October 15th, 1941, the deceased employee, Gustav Szynkielewski, while working as a stevedore for the Ocean Terminal and Stevedoring Corporation, on board the Motor Steamship Buenos Aires at Pier No. 11, Baltimore Harbor, was struck on his left leg by a swinging draft, as a result of which he suffered fractures of three bones in the left ankle; that he was promptly hospitalized on the same day; given an anaesthetic and the fractures reduced and a cast applied; that upon admission to the hospital, he showed evidence of extreme nervousness, and since he had an alcoholic history which was known to one of the doctors attending him, doses of whiskey of about one or two ounces twice daily, and oftener if necessary, were prescribed for him; that for two succeeding days the patient's condition was satisfactory, but that on the evening of October 17th, he became very restless and irrational; that this condition became intensified until the early morning of October 18th, when he entered into a coma and died; that the written records of the hospital disclose, as its diagnosis of his death, fracture of the left tibia and fibula and delirium tremens; that the record of an autopsy performed on October 19th, gave the manner or his death as "accidental" and the cause as "fracture of the left tibia and fibula" and "chronic alcoholism"; and the autopsy also showed swelling and hemorrhage about the fractures.

The Deputy Commissioner found "that at the time of the employee's death he had not recovered from the effects of the injury; that following the injury the employee's condition became progressively worse; that the death of the employee which occurred on the morning of the fourth day following the injury, is causally related to said injury." Accordingly, the Deputy Commissioner awarded death benefits to the mother of the deceased and funeral and burial expenses in accordance with the provisions of the Act.

The testimony of four physicians was taken before the Deputy Commissioner, two called by the claimant, the present appellee, and two on behalf of the employer and the insurer, the present appellants. One of the doctors called by the claimant had never seen the deceased alive. He was an assistant medical examiner for the State of Maryland and performed the autopsy. He testified that death was due solely to acute alcoholism, although his official autopsy record gave as the cause of death both the fracture of the left fibula and tibia, and chronic alcoholism. He attached no importance to some lung embolism disclosed by the autopsy. The heart, lungs and other major organs were found to be normal, or substantially so. The other doctor called on behalf of the claimant, a practitioner in general medicine over a period of some ten years, never saw the deceased, dead or alive, but based his opinion solely on the autopsy and hospital reports. He gave as his opinion that there was causal connection between the accident and the death, and that chronic alcoholism was not a cause of the death, but that death was due to lung embolism caused by the fractures.

Of the two doctors who testified on behalf of the employer and the insurer, one was the chief medical examiner for the State of Maryland. He had never seen the deceased and based his opinion entirely upon the findings of his assistant, who performed the autopsy, and with whom he entirely agreed. The remaining doctor, who had been a practising physician and surgeon for some fifteen years and who testified on behalf of the employer and insurer, had known the deceased for a considerable period of time, during which he had treated

him professionally and knew of his addiction to alcohol. He set the fractures of the deceased in the hospital under anaesthesia and thereafter prescribed small doses of whiskey for him, which were administered, as well as sedatives when, on the day before his death, he became irrational and difficult to control. This witness expressed the opinion that death was due to delirium tremens and that the injury was unrelated to the death. He saw the deceased numerous times while he was in the hospital and finally as late as eight or ten hours before he died. He stated that the deceased had had prolonged jitters, caused, as is common, he said, with those suffering from acute alcoholism, by not getting, while in the hospital, as much alcohol as he had been accustomed to get, or possibly due to having got too much. In this connection there was a proffer of testimony that the deceased, while in the hospital, had obtained and had drunk surreptitiously large amounts of whiskey greatly in excess of the dosages which had been prescribed for him. However, such testimony was excluded by the Deputy Commissioner because mere hearsay. This physician further testified that the deceased displayed to him no symptoms of shock as a result of his leg injury, and that any shock which he might have been caused by such injury did not produce the delirium tremens.

We see no ground for disturbing the Deputy Commissioner's findings that Gustav Szynkielewski's death was directly related to the injury suffered in the course of his employment, because there is substantial evidence to support such finding. It is not the weight of the evidence that must control us, nor whether the court necessarily agrees with the Deputy Commissioner's conclusion, but merely whether there is evidence present in the record in this case, as it comes from the Deputy Commissioner, sufficient to justify his finding. There can be no trial de novo of the facts in the absence,—which is the case here,— of a jurisdictional question. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184.

As already stated, three out of the four physicians testified that the sole cause of death was acute alcoholism. The fourth said the injury was a cause of the death, and it was stated in the hospital report which was signed by a staff physician (who did not testify) and by Dr. Wilkinson (one of the physicians who did testify) that both delirium tremens and the fractures caused the death. Dr. Wilkinson did not explain the apparent inconsistency between the hospital records and his testimony, except by his statement that he asked for an autopsy in order to clear away any doubt as to cause of death. The original report of the autopsy made by Dr. Vandegrift gave both the fractures and chronic alcoholism as the cause, but later, in testifying before the Deputy Commissioner, Dr. Vandegrift, as already noted, qualified his original report by stating that delirium tremens was the sole cause of death, except in so far as the treatment for the fractures may have been a cause of the deceased being deprived of alcohol, and such deprivation may have induced the delirium tremens.

We thus have the finding of the Deputy Commissioner that there was causal connection between the injury and the death, squarely supported by (1) the testimony of one of the four physicians; (2) by the hospital records signed by one of the other physicians; and (3) by the written autopsy report, albeit the doctor who made this report later qualified it, but admitted that the fact that the deceased had been deprived, while in the hospital, of considerable amounts of alcohol may have induced the delirium tremens, in other words, that enforced abstinence due to the fractures may have had a causal relation to the delirium tremens. Unquestionably this testimony is legally sufficient, in and of itself, to support the Deputy Commissioner's conclusion. Therefore, we are not required to analyze the opposite medical opinions.

It is to be noted that the Deputy Commissioner did not exclude,—nor do we, —the possibility that *both* the injury and delirium tremens caused the death. It is true that each of the four doctors isolated the cause,—none of them being willing to say that there was more than one cause of death. But for the purposes of the present inquiry it is entirely sufficient if there is some substantial evidence to support a finding that the injury was one,—not necessarily the only,—cause of the death, and that such is the case we have no doubt, for the reasons just stated. Therefore, whether the injury helped to bring on the delirium tremens because of unaccustomed deprivation of alcohol brought about by the hospitalization, or because of shock,—which briefly defined is an "insult" to the nervous system (American Red Cross First Aid

Text Book, page 83)—caused by the injury and its necessary treatment, or because of both, we need not attempt to determine. However, it is not inappropriate to observe that there is ample authority to the effect that delirium tremens, following an injury, has been brought on or aggravated by the injury, and in such cases, where death has been accelerated by the delirium tremens, liability for the death, both in tort actions and under compensation statutes, has been sustained on the ground that death was produced by the injury. See McCahill v. New York Transportation Co., 201 N.Y. 221, 94 N.E. 616, 48 L.R.A.,N.S., 131, Ann.Cas.1912A, 961; Sullivan v. Industrial Engineering Co., 173 App.Div. 65, 158 N.Y.S. 970. Similarly, if as a result of being bed-ridden because of an injury, pneumonia or some other disease ensues which proves fatal, the injury is clearly a cause of death. The same is true if the patient had a serious heart ailment or the seeds of a fatal disease in his system, and the injury suffered by the patient caused such ailment or disease to develop more rapidly than otherwise would have been the case, so that death was thereby accelerated. The causal relation is clear in both illustrations. Many similar examples are of common knowledge in medicine and surgery. The analogy to the present case is obvious.

An order will be signed, in accordance with this opinion, affirming the award of the Deputy Commissioner.