GUTHRIE *v.* DETROIT SHIPBUILDING CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENTAL DEATH—EVIDENCE.

> On certiorari to review an award of compensation by the industrial accident board, under the workmen's compensation act, where the autopsy showed that death resulted from mitral regurgitation, and there was no evidence that anything unusual or fortuitous occurred, and no competent testimony upon which to base the conclusion that the death of plaintiff's decedent was the result of an accident within the meaning of the act, the award of the board will be reversed.

Certiorari to Industrial Accident Board. Submitted January 25, 1918. (Docket No. 69.) Decided March 27, 1918.

Ada A. Guthrie presented her claim for compensation against the Detroit Shipbuilding Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed.

*Douglas, Eaman & Barbour,* for appellant.

*Frederick T. Witmire,* for appellee.

STONE, J. This case is here on certiorari to review the action of the industrial accident board in reversing an order of the committee on arbitration, and ordering compensation to be made to claimant.

If compensation should be awarded in this case at all, it would be in the sum of $10 per week for a period of 300 weeks. The sole question is whether any award should be made to the claimant.

Claimant herein is the widow of Dalyrimple Guthrie, machinist, who died on the 30th day of April, 1916, while in the employ of the defendant company. On that day deceased started work at about 7 o'clock a. m., and at 3 o'clock p. m. he had finished one job. After an intermission of two hours, and at 5 o'clock p. m., he started on the job of repairing the steering gear of the steamer City of Alpena, and remained there up to the time of his death at about 11 o'clock p. m. The long working day was not unusual in his employment, as he had worked 31¼ hours on April 21st and 22d. This was about a week before his death. There was necessity of working rapidly on the repairing of the steering gear; and at about 11 p. m., deceased, with two others, was working on the water level deck of the steamer in a room in which

the temperature was somewhere between 75 and 78 degrees. There were two portholes open and two doors open from this room leading out to the open air, and the boat was lying in the river, moored to the dock. In order to reach the gear which was to be replaced it was necessary for the workman to work on a platform about four feet above the level of the floor. Part of the work consisted in lifting a cover of the gear box, from a position about waist high to the workmen, up over the shaft to a position about shoulder high. This cover was made of metal and weighed somewhere between 150 and 175 pounds. Deceased and two fellow workmen were lifting this cover. After completing a part of the work, deceased started to walk along the platform to change his position. After a lapse of about one or two minutes after deceased had stopped lifting, his fellow workmen heard what they described as a "thud." At the time deceased had been working on one side of the machine, out of range of vision of the two fellow workmen. On walking around to the place where deceased had been working, his coworkers discovered him lying on the floor with a slight bruise under his chin. There was a small quantity of blood on his lips, due, the physician testified, to laceration of the tongue. A doctor was called at once, and on his arrival, about 30 minutes later, he pronounced the man dead from heart failure or apoplexy. At about 7 o'clock the following morning a coroner's autopsy was performed on the deceased, and the cause of death found to be mitral regurgitation.

On September 7, 1916, a committee on arbitration heard and considered the testimony and found that no compensation was due to claimant, and made an order accordingly. The decision of the arbitration committee was reversed on appeal to the full board (the depositions of two additional physicians having

been taken and submitted to the board), and it entered an order awarding claimant compensation for 300 weeks at $10 per week.

It is the claim of appellant that the order and award of the industrial accident board should be reversed and compensation denied, because the death of deceased was not due to an accident arising out of his employment. The cases relied upon by appellant are: *Kutschmar* v. *Manufacturing Co.*, 197 Mich. 146; *Van Gorder* v. *Motorcar Co.*, 195 Mich. 588; *Stombaugh* v. *Fence Co.*, 198 Mich. 445; *Johnson* v. *Mining Co.*, 199 Mich. 218.

It is, as we understand it, the claim of the appellant that there was nothing about the work, or employment, that was accidental or even unexpected; that the work was proceeding in the manner intended, and that nothing fortuitous occurred while the work was proceeding.

Upon the subject of the place where the men were working, it may be said that it was not even unusual. The undisputed evidence shows that the temperature was from 75 to 78 degrees, which was about what is termed summer heat. The evidence shows that steam had been off for 20 hours, and the room in which the work was being done was ventilated by two portholes, 12 inches by 14 inches in diameter, one on each side, and two large doors, one open to the dock and the other to the river. Claimant's physician testified that the temperature was not an excessive heat and would not have produced death from heart disease. So we repeat, that it cannot be claimed that the temperature in which claimant's decedent was working was unusual or fortuitous.

Upon the subject of strain: Deceased was a machinist, and was employed to do any machine work that the foreman or the superintendent directed him to do. The work that he was doing at the time of his

death was ordinary work, the same class of work he was doing before, apparently no more strenuous than his other jobs. This cover that they were lifting had been lifted off the shaft by two men earlier in the day. There is no testimony in the record to warrant a finding that there was anything especially heavy about the work deceased was doing. In fact, the testimony of the physician for claimant negatives any such inference. There was no showing in the evidence that deceased made any special effort or strain; he was merely helping to lift the cover, which was not extraordinarily heavy, and there is no testimony that he strained himself, or that the lift was heavier than ordinary. We think, therefore, it cannot be claimed that there was anything fortuitous in the lifting of the cover; and there was nothing fortuitous about the work.

Upon the subject of long hours, it cannot be said that the working day was out of the ordinary. The testimony is undisputed that deceased had worked longer hours before, having worked 31¼ hours on April 21st and 22d.

The burden certainly is on claimant to show that there was an accident; and there was nothing fortuitous in the long working day. No claim is made that the place itself was unsafe or insecure. There was no claim or evidence that the deceased slipped, and there was nothing on the platform that would cause one to slip or fall. The undisputed evidence is that they were just dry planks—not even grease spots upon them. There is nothing from which it can be inferred that the deceased slipped or stumbled. It cannot be assumed that the man made a misstep, and then again assumed that such misstep caused fright, and then again assumed that the fright caused the heart to stop. This would be not only basing an assumption upon an assumption, but would be taking one into the realms of conjecture.

In *Schroetke* v. *Jackson-Church Co.*, 193 Mich. 616, at p. 627, a number of English cases were referred to and distinguished. Those cases were *O'Hara* v. *Hayes*, 3 B. W. C. C. 586; *Kerr* v. *Ritchies*, 6 B. W. C. C. 419; *Black* v. *Shipping Co.*, 6 B. W. C. C. 720.

It seems to us that the instant case falls within the doctrine of the English cases just referred to.

It is the claim of appellee here that death was due to an accidental injury arising out of the employment of the deceased, and it is said:

"The industrial accident board having found as a fact that the combined circumstances resulted in the death of the deceased, their finding is final and cannot be reviewed, provided, however, that there is any legal evidence produced to support such finding."

Was there any evidence to support such finding? We think there was none. An examination of the finding of the board shows that its decision is based upon and sought to be justified by the following cases: *La Veck* v. *Parke, Davis & Co.*, 190 Mich. 604; *Schroetke* v. *Jackson-Church Co.*, supra; *Ramlow* v. *Ice Co.*, 192 Mich. 505.

While the *LaVeck Case* is a borderline case, there was evidence there of overexertion and excessive heat, a condition which was clearly unusual if not fortuitous; and the *Schroetke Case* is clearly distinguished from the instant case. We can arrive at no other conclusion than that the claimant has failed to show, by any evidence, that the death was due to accident. The record is entirely barren of any evidence of an accident.

That an injury received by a workman while engaged in his usual work, without intervention of something unusual or fortuitous, is not an accident, is now so well established by our decisions, that the proposition needs no discussion. *Van Gorder* v. *Motorcar Co.*, supra; *Kutschmar* v. *Manufacturing Co.*, supra;

*Stombaugh* v. *Fence Co., supra; Johnson* v. *Mining Co., supra.*

In all of those cases compensation was denied. They have been so often referred to, and discussed by us, that it is unnecessary here to quote from them.

In our opinion there was no evidence to support the finding of the industrial accident board, and its award and order are reversed.

OSTRANDER, C. J., and BIRD, STEERE, and BROOKE, JJ., concurred with STONE, J.

FELLOWS, J. For the reason stated by me in *Tackles* v. *Bryant & Detwiler Co., ante,* 350, I concur in the reversal of the award in this case.

MOORE, J., concurred with FELLOWS, J. KUHN, J., did not sit.