## McEWAN v. INDUSTRIAL COMMISSION OF UTAH.

No. 3974.   Decided June 29, 1923.   (217 Pac. 690.)

1.   MASTER AND SERVANT—WHETHER HERNIA IS COMPENSABLE DETERMINED MAINLY BY COMMISSION'S RULES.   Whether the descent and strangulation of a pre-existing hernia is an injury resulting from an accident within the Industrial Act should be determined mainly, in the absence of special statutory provision, by the rules of the Industrial Commission in hernia cases.

2.   MASTER AND SERVANT—INJURY AGGRAVATING DISEASE COMPENSABLE.   An accidental injury which aggravates an existing disease is compensable under the Industrial Act.[1]

3.   MASTER AND SERVANT—DESCENT AND STRANGULATION OF HERNIA WHILE LIFTING HELD COMPENSABLE AS INJURY BY "ACCIDENT."   The descent and strangulation of a pre-existing hernia, in spite of a truss, while lifting a large radiator, which would have fallen on the lifter and probably his fellow workmen if he had let go, *held* compensable as an injury resulting from an accident within the Industrial Act.

Proceedings under the Industrial Act by Robert H. McEwan, claimant.   The Industrial Commission made an order denying compensation, and claimant brings certiorari.

ORDER SET ASIDE.

*F. W. James,* of Salt Lake City, for plaintiff.

[1] *Pinyon Queen Mining Co.* v. *Ind. Comm.*, 59 Utah, 402, 204 Pac. 323; *Tintic Milling Co.* v. *Ind. Comm. of Utah*, 60 Utah, 14, 206 Pac. 278, 23 A. L. R. 325; *Cherdron Const. Co.* v. *Simpkins*, 61 Utah, 493, 214 Pac. 596.

*Harvey H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst. Atty. Gen., for defendants.

THURMAN, J.

This is a proceeding in certiorari to set aside an order of the Industrial Commission of Utah denying plaintiff compensation for an injury alleged to have resulted from an accident arising in the course of his employment. After finding the jurisdictional facts the Commission found as follows:

"That on December 20, 1922, at the hour of 11 a. m., Robert H. McEwan, applicant, while lifting a large radiator, suffered a descent of the bowel into the scrotum, right side; that said descent was not a new condition, but had occurred many times previously; that the applicant had suffered from a right inguinal hernia for approximately 10 years, which had descended on various occasions, but on this particular* occasion became strangulated to such an extent that the reduction was impossible, and an operation became necessary; that the applicant shortly after the descent of the hernia, on December 20, 1922, sat around his place of employment until his dinner hour had arrived; that he went home about 12 o'clock noon, went to bed, tried to reduce the hernia, but was unsuccessful; that he called Dr. Wm. Beers, of Salt Lake City, Utah, who also made an attempt at reduction of the hernia, but was unsuccessful; that the applicants's condition became such that he was taken to the L. D. S. hospital, and was operated upon the same afternoon, at the hour of 4:30, by Dr. Beers; that the applicant paid to the L. D. S. hospital the sum of $74.55 for room rent, laboratory service, drugs, and telephone; that the applicant has paid to Dr. Wm. Beers the sum of $100, which is the amount specified in the Medical Fee Schedule for a hernial operation; that the applicant received a wage in the sum of $44 per week, working 5½ days a week; that James Plumbing & Heating Company, on the date of the alleged injury, was an employer of labor subject to the State Industrial Act, having in its employ three or more workmen regularly employed, and that it had secured workmen's compensation insurance with the state insurance fund."

From the faregoing facts the Commission concluded that the injury was not the result of an accident, and therefore compensation was denied.

The sole question to be determined is: Was the injury the result of an accident within the meaning of the Industrial

Certiorari

Act? The finding of the Commission that there was no accident is vigorously challenged by the plaintiff as being unsupported by the evidence.

The testimony of plaintiff, which is uncontradicted, in substance shows that, on the 20th day of December, 1922, while in the course of his employment by the defendant Plumbing Company, he was called upon to assist in lifting and hanging a radiator upon the wall of a building then in course of construction. He said, "My rupture came out, and I couldn't get it back." He said it pained him, but not so severely just at that time. He sat down on a bench. The hernia burned him, and made him sick at his stomach. He went home, got in bed, and tried to "put it back, but couldn't." He then called for Dr. Beers. The doctor came and tried to put the hernia back, but was unable to do so. The doctor took him to the hospital and operated upon him the same day. The plaintiff further testified that he had had a rupture for about 10 years. "It used to come out a little bit," but he could put it back himself. He would not have to lie down. This was the first time the hernia ever strangulated. When he first noticed he thought it was the same as it ordinarily was, and wondered why he could not put it back. It was accompanied with severe pain. Testifying in greater detail, plaintiff said that while lifting the radiator he was in such a position he could not release his hold. If he had the radiator would have dropped upon him. While they were lifting the radiator he appreciated the fact that the hernia was coming down. It commenced to hurt, but he was in such a position he "couldn't let go." Another employé took his place. He had a truss on at the time, but the hernia came down notwithstanding. He had worn a truss about 6 years.

It appears from the undisputed evidence that notwithstanding the pre-existing hernia the plaintiff, who was a plumber, had always been able to do his work satisfactorily.

Dr. Beers testified that he attended the plaintiff the day of the injury. He found a strangulated hernia—a right inguinal hernia. Plaintiff was home in bed. Witness at-

tempted to reduce the hernia, but found it impossible. De-
scribing the nature and cause of a strangulated hernia the
witness said:

"Now Mr. McEwan's condition was he had this hernia for some
length of time, and it had been down several times, and he had had
no difficulty in reducing it. But in this case it came down while
in the act of lifting, and strain was so great that it forced more of
the bowel down than it had before, and when he attempted to
reduce it the ring was too small to permit the knuckle of the intes-
tine to go back, and the longer it stayed there the more the bowel
swelled up and the tighter it got, and those are the cases that
require operation.

"Mr. Knerr: In other words, the strain aggravated the old con-
dition? A. Yes.

"Mr. James: To what extent did it aggravate the old condition?
Well, it was the maximum, because, as I understand from those
who were there, he was lifting a very heavy weight, and it became
necessary for him to retain this heavy weight for a period of time,
or have it fall on him, and in that position, and, not being able
to protect himself, he was holding this weight, and, as you under-
stand any one doing heavy lifting as this had set his muscles, and
the diaphragm forced this down into the canal, and that was the
cause of the strangulation.

"How long do you think it will be before he will be able to
resume his work as a plumber? A. Well, I wouldn't advise him
to undertake to do any heavy work for three months."

Dr. Beers further testified:

"There must have been 10 or 14 inches of bowel down in the
sac and strangulated, filled with a matter that was more or less
hard, and the bowels were a dark brown, showing strangulation
was sufficient to shut off the bowels."

He testified he had to remove a considerable portion of
the omentum—a portion as large as his two hands. The lump
in the sac was as large as plaintiff's head. It was more ag-
gravated and serious than an ordinary hernia. There must
have been a severe strain to force that quantity of bowel
and omentum into the canal. The doctor stated that about
three months' disability after an operation was usual in such
cases. The patient might perform light work within a shorter
period if goods results are obtained.

Many cases relating to hernia have been called to our at-
tention by the respective parties. Many of them were de-

cided under statutes containing special provisions relating
to hernia. The Utah statutes make no special provision in
such cases. It is doubtful if the authorities relied on by
plaintiff and defendants, except the Utah cases, are of suffi-
cient relevancy, under the circumstances, to justify an ex-
tended review. Nevertheless we cite the leading cases re-
ferred to for the enlightment of the reader who may be in-
terested in the general subject. The following are relied on
by plaintiff: *Tintic Milling Co. v. Ind. Comm.*, 60 Utah, 14,
206 Pac. 278, 23 A. L. R. 325; *Pinyon Queen Min. Co. v. Ind.
Comm.*, 59 Utah, 402, 204 Pac. 323; *Puritan Bed Springs
Co. v. Wolfe*, 68 Ind. App. 330, 120 N. E. 417; *Hurley v.
Selden-Breck Const. Co.*, 193 Mich. 197, 159 N. W. 311; *State
ex rel. Puhlmann v. Dist. Court of Brown County*, 137 Minn.
30, 162 N. W. 678; *Shadbolt v. Department of Labor and
Industries of Washington* (Wash.) 209 Pac. 683; *Patrick v.
J. B. Ham Co.*, 119 Me. 510, 111 Atl. 912, 13 A. L. R. 427;
*Cherdron Const. Co. v. Simpkins*, 61 Utah, 493, 214 Pac. 593.
Defendants cite the following: *Albert v. J. C. & W. E.
Powers*, 223 N. Y. 97, 119 N. E. 229; *Guthrie v. Detroit Ship-
building Co.*, 200 Mich. 355, 167 N. W. 37; *Kutschmar v.
Briggs Mfg. Co.*, 197 Mich. 146, 163 N. W. 933, L. R. A.
1918B, 1133; 15 N. C. C. A. 523; *Chicago & A. R. Co. v. Ind.
Board of Ill.*, 274 Ill. 336, 113 N. E. 629.

In the opinion of the court the case at bar, in the absence
of special statutory provision, should be determined
mainly by the rules established by the Commission for
its guidance in hernia cases. These rules are as
follows:

"(A) Real traumatic hernia is an injury to the abdominal
(belly) wall of sufficient severity to puncture or tear asunder said
wall, and permit the exposure or protruding of the abdominal
viscera or some part thereof. Such an injury will be compensated
as a temporary total disability and as temporary partial disability,
depending upon the lessening of the injured individual's earning
capacity.

"(B) All other hernias, whenever occurring or discovered, and
whatsoever the cause, except as under (A), are considered to be
diseases causing incapacitating conditions or permanent partial
disability, but the permanent partial disability and the causes of

such are considered to be, as shown by medical facts to have either existed from birth, to have been years in formation, or both, and are not compensable, except as hereinafter provided.

"(C) All cases (B) in which it can be proven: (1) That the immediate cause which calls attention to the presence of the hernia is a sudden effort or severe strain or blow received while in the course of employment; (2) that the descent of the hernia occurred immediately following the cause; (3) that the cause was accompanied or immediately followed by severe pain in the hernia region; (4) that the above facts were of such severity that the same were noticed by the claimant and communicated immediately to one or more persons—are considered to be aggravations of previous ailments or diseases, and will be compensated as such for time lost only to a limited extent, depending upon the nature of the proof submitted and the result of the local medical examination, but not to exceed two months."

These rules of the Commission, especially the last above quoted, are in harmony with several cases recently decided by this court. It has become an established doctrine in this jurisdiction, as well as in most jurisdictions of the country, that an accidental injury which aggravates an existing disease is compensable under the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165). Such was the holding in *Pinyon Queen Min. Co. et al.* v. *Ind. Comm. of Utah*, supra. In that case, however, there was no question but that the injury resulted from an accident. In *Tintic Milling Co.* v. *Ind. Comm. of Utah*, supra, the principal point in controversy was whether or not there was an accident. The claimant had been afflicted for years with pulmonary tuber-   2 culosis. On the date of the alleged accident he was called upon to assist in putting a bulkhead in a flue that carried fumes from a roaster. The roaster was not entirely dead, and was throwing off fumes. While engaged in the work the applicant was "gassed," causing him to sustain bronchial irritation, followed immediately by nausea and vomiting. He attempted to work, more or less, for several days, but constant coughing finally resulted in a profuse hemorrhage from the lungs, whereby he was forced to discontinue his work. This court held not only that his injury was the result of an accident but that it was the aggravation of an existing disease for which he was entitled to compensation.

In *Cherdron Const. Co. et al.* v. *Simpkins et al.*, supra, the question was whether the injury was caused by an accident. After a careful review of the authorities the court, at page 500 of 61 Utah, 596 of 214 Pac. says:

"In view of the authorities above referred to, and others which we have examined, we are of opinion that the decided weight of authority, under the statutes similar to ours, is to the effect that strained effort or overexertion may cause an accidental injury for which compensation will be allowed. The underlying principle seems to be that the injury must happen suddenly, undesigned and unexpected, and at a definite time and place."

In the light of these cases, and especially in view of the rule established by the Commission itself in cases of this kind, it is difficult to find a reasonable excuse for denying plaintiff compensation in the instant case. His injury happened in the course of his employment; it happened suddenly and unexpectedly at a specified time and place, and was a very serious aggravation of an existing disease. It is true he says he felt the hernia coming down while he was lifting, but he thought it was just the ordinary and usual descent. He was wearing his truss at the time, and no doubt supposed that was a sufficient protection, but it came down and strangulated in spite of his truss. This was the feature that was wholly unexpected. It resulted in the necessity of an immediate operation and total temporary disability, for all of which he seeks compensation.

Independent of the rules of the Commission in hernia cases, heretofore quoted, in the opinion of the writer, the weight of authority from other jurisdictions in such cases justifies the allowance of compensation in the present case. Many of the cases cited by plaintiff are very much in point.

*Puritan Bed Springs Co.* v. *Wolfe,* supra, was a hernia case. While lifting a heavy bale of wire the applicant's body became severely strained, causing the protrusion of an intestine into an existing hernial sac producing an immediate intestinal strangulation. The Commission allowed compensation, and the appellate court sustained the award. See, also, *Hurley* v. *Selden-Breck Const. Co.,* supra.

We are not unmindful of the fact that ordinary hernia

cases are not unusual, and that attempts at imposition are to be expected, and should be guarded against whenever possible.

In the case at bar there is one feature which differentiates it from the ordinary case. The uncontradicted evidence shows that the plaintiff's injury was the result of an emergency from which there was no escape. After realizing the predicament in which he found himself the accident appears to have been unavoidable. If he had let go of the radiator it would have fallen upon him, and probably upon his fellow workmen whom he was assisting in the work.

Whatever else may be said as to ordinary cases of hernia, we have no hesitancy in holding that in the instant case the plaintiff is entitled to compensation for the injury he has suffered.

For the reasons stated, the findings of the Commission and its order denying plaintiff compensation is hereby vacated, annulled, and set aside. Plaintiff to recover costs of this proceeding.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J., did not participate herein.