# UTAH-IDAHO CENTRAL R. CO. et al. v. INDUSTRIAL COMMISSION OF UTAH

No. 4670.  Decided May 10, 1928.  (267 P. 785.)

*De Vine, Howell, Stine & Gwilliam,* of Ogden, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendant.

GIDEON, J.

Review of an order of the Industrial Commission awarding compensation to one P. E. Erickson (applicant) for permanent partial disability by reason of an industrial accident.

The record discloses that on November 9, 1926, applicant was employed by the Utah-Idaho Central Railroad Company at Ogden, Utah. On that date he was engaged as a carpenter repairing a car. It seems that the sides of the car had been removed, leaving the roof resting on the end supports. It appears that at the time applicant was assigned to this work some suggestion was made by him that it would be advisable to brace the roof before he started work. This was thought unnecessary by the foreman and the applicant proceeded in the discharge of his duties. Shortly thereafter he observed that the roof of the car was falling. He attempted to escape by jumping, but in so doing came in contact with certain timbers which threw him back on the floor of the car and the roof pinned him down. The preponderance of the evidence establishes the fact that he was thrown on his back "with his knees doubled up towards his chin in a jackknife position with the roof resting on his legs

and knees which were pressed against his chest." Other workmen lifted the roof and he rolled out upon the ground. It is applicant's testimony that he was unable to walk or stand. He was shortly thereafter removed to the Dee Hospital, where he received treatment from the company physician, Dr. Dumke. The accident occurred near the hour of 7:30 in the morning. Dr. Dumke testified that he saw the applicant at the hospital about 8 o'clock a. m. of the same day. The doctor further testified:

"When I examined him at that time he was bruised about both hips and legs and complained of pains down both groins."

Applicant was treated at the hospital for 28 days and was then taken to his home. The attending physician found no bone lesions or fractures. It was later ascertained that applicant was suffering from an inguinal hernia. An operation was performed for that trouble and the applicant has since fully and completely recovered from the operation. The insurance carrier assumed liability, and the applicant was paid compensation from the date of the accident till June 2, 1927, on which date the carrier declined to make further payments. Applicant was examined by the medical examining board of the commission, and by other physicians at the request of the insurance carrier. Efforts were made to have the parties adjust the matter without a formal hearing before the commission. These efforts failed. An application was filed and a hearing had on November 17, 1927. Thereafter the commission made findings and conclusions and awarded the applicant compensation. The commission's general findings contain a review of the accident, the treatment received, and the resulting injuries. The fourth finding of the commission, the one assailed by petitioners here, is as follows:

"That the applicant was earning a wage of $24 per week working 6 days per week; that as a result of the injuries sustained by applicant on the 9th day of November, 1926, he suffered a period of temporary total disability up to October 13, 1927, and as a further result of said

injuries suffered permanent partial disability both physical and mental, which incapacitates him fully 50 per cent as a workman."

By the order following this finding the employer, railroad company, or the insurance carrier, is directed to pay the applicant, in addition to the compensation theretofore received by him, the sum of $13.85 weekly for 100 weeks on account of permanent partial disability suffered by applicant from the injuries received November 9, 1926, and that said payment be made in a lump sum without discount. It is the contention of the employer and insurance carrier that the above finding is not supported by any substantial competent testimony. This contention is the only question here involved.

The applicant testified at the hearing before the commission. He stated that he was 42 years of age at the time of the accident, a carpenter by trade, able-bodied, in good health, and prior thereto had worked whenever he could obtain employment. He further testified that since the accident he had been unable to work at his trade, or, in fact, to do any heavy work; that the railroad company had given him light work to do, but that he was unable to continue at such work; that he did "certain chores around the house"; that he suffered pain in his back when he stooped over or attempted to straighten up; and that he had difficulty in walking in this, that he would stumble over objects which extended slightly above the level of the walk. In short, his testimony was that he had been unable during all the time since the accident to do any continuous work. His wife corroborated his testimony.

As stated above, the applicant was examined by the medical board of the commission, which consisted of Drs. Jack, Kahn, and White. Dr. Jack, under date of July 15, 1927, reporting for this board, says:

"I would state that this man apparently has some disability in his back. We are unable to determine the amount of his permanent dis-

ability and would suggest that it be a matter for arbitration between the employer, the patient, and the Industrial Commission."

Drs. Kahn and White concurred in that report. Dr. S. C. Baldwin, of Salt Lake City, examined applicant on about September 21, 1927. This examination was made at the request of the insurance carrier, the Aetna Life Insurance Company. Dr. Baldwin, in his report to the insurance carrier which is made a part of this record, says:

"Examination shows his [applicant's] back to be quite stiff in the lumbar region when he attempts to bend in either direction. He claims that he has no trouble with his kidneys. His testicles hang low and he claims that he has pain in this region, which I think would likely be relieved by wearing a suspensory bandage. Tapping his back in the lumbar region finds a tender spot on the left side about the second lumbar and one on the right side about the third lumbar. He claims that his knees and legs do not support him and that on the right knee a certain spot feels like needles running in him, but his knee jerks on both sides normal. He says his appetite and digestion are good and his bowels are regular. His temperature is normal and his blood pressure is 145-100.

"I can find no serious lesion in his spine and think that his trouble is probably more muscular than otherwise, which might be improved by hot applications and deep massage. At this time I cannot find anything that I think should cause a disability of more than 25 per cent."

Dr. Pugh, who likewise examined applicant at the request of the insurance carrier, and who doubtless made the most thorough examination made by any of the physicians who testified in the case, was positively in his view that the applicant was not suffering from any muscular or bone lesion. In fact, his testimony was that there was no physical disability that he could discover either from the examination or from X-ray pictures taken. This physician was likewise of the opinion that the pain or other disability troubling applicant at the time of the hearing was in no way due to the

accidental injuries which he sustained while in the employ of the railroad company. Dr. Pugh attributed the trouble with which applicant was afflicted to an arthritis condition. This he concluded from the examination and from X-ray pictures taken of some of the vertebrae of the applicant located higher up the spine than where applicant complained of pains at the time of and immediately subsequent to the accident. It was the doctor's view that this arthritis condition was in existence prior to the date of the accident although the applicant may not have been aware of such condition.

There is nothing in the record to suggest that applicant is shamming or that he is not sincerely of the belief that he is suffering from the result of the injuries received in the accident and is unable to do physical labor. While the commission does not make any specific finding upon the question as to whether applicant is acting in good faith, its findings necessarily negative any other or different inference than that applicant is suffering injuries received from the growing out of the accident. Its finding is that applicant has "suffered permanent partial disability, both physical and mental." The report of the medical board quoted is some evidence that applicant has sustained permanent partial disability. The report of Dr. Baldwin, quoted, also recognizes that applicant has suffered some disability. The commission is the fact-finding body. If there is any substantial evidence to support its findings, such findings are conclusive upon this court. That is true regardless of whether this court, or any member thereof, might draw different conclusions or make different findings from the evidence passed on by the commission. The statements of the physicians quoted, considered in connection with the testimony of the applicant and his wife, support a finding that applicant has sustained some permanent partial disability. The commission determined that the extent of that disability was 50 per cent., and awarded

compensation accordingly. In face of the testimony appearing in this record, to annul the award would be for this court to set up its judgment on a question of degree or the extent of the disability. If any weight is to be given the testimony of applicant, then it cannot be said that there is no substantial evidence to support an award of 50 per cent permanent partial disability. In addition, however, if it be conceded that Dr. Pugh is correct in his conclusion that applicant is suffering from an arthritis condition in no way attributable originally to the accident, there is still, in our judgment, substantial evidence in the record sufficient to support the commission's award. In the transcript of the testimony of Dr. Pugh the following questions and answers appear: ·

"Q. You have heard the applicant describe the manner in which he was injured? A. Yes.

"Q. Would that, in your judgment, have a tendency to aggravate this condition in these lumbar vertebrae where you found it, the one nearest the sacrum? A. It may have aggravated it. * * * Well, my honest opinion of it is that the arthritis was a pre-existing condition. Now ordinarily, an arthritis in an active stage will improve with rest. This man was in bed 28 days in the hospital. According to the history he gave me, he complained very little, if any, of his back until he had gone home. * * * Now, assuming that he had an arthritis there before the injury, we cannot deny the fact that that injury might have aggravated that some."

It thus appears that from whatever angle we view the testimony whether the condition of permanent partial disability resulted from the accident or resulted from an aggravation of a pre-existing condition the applicant is entitled to compensation. A latent disease or trouble, if accelerated or lighted up by an industrial accident and a more serious injury results by reason of the fact of the existence of such latent ailment than otherwise would in a normal recovery from injuries received from or in an accident, in such case the injured employee is entitled

to additional compensation. *Pinyon Queen Min. Co.* v. *Industrial Commission,* 59 Utah 402, 204 P. 323; *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah 14, 206 P. 278; *Milford Copper Co. of Utah* v. *Industrial Commission,* 61 Utah 37, 210 P. 993; *McEwan* v. *Industrial Commission,* 61 Utah 585, 217 P. 690; *Continental Casualty Co.* v. *Industrial Commission,* 63 Utah 59, 221 P. 852.

As we understand the authorities, regardless of whether the loss of ability to earn such wages as the applicant was receiving at the time of the accident is ■ by reason of either a physical or mental impairment he is entitled to compensation. The first headnote to *Rialto Lead & Zinc Co.* v. *State Industrial Commission,* 112 Okl. 101, 240 P. 96, 44 A. L. R. 494, is as follows:

"Where, as the approximate result of an accidental personal injury sustained by an employee arising out of and in the course of his employment, such employee, after all objective and subjective symptoms of actual physical injury are removed, suffers from a nervous breakdown and a neurasthenic condition ensues attributable to such injury which precludes the employee from resuming his work in his former occupation, such mental condition is an injury arising out of and in the course of his employment and is compensable under the provisions of the Workmen's Compensation Act."

The award of the commission is affirmed.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.