ANDREASON et al. v. INDUSTRIAL COMMISSION et al.

No. 6170.  Decided May 31, 1940.  (102 P. 2d 894.)

For former opinion, see 98 Utah 551, 100 P. 2d 202.

*Newell G. Daines* and *Jesse P. Rich,* both of Logan, for plaintiffs.

*Joseph Chez,* Atty. Gen., *Grover A. Giles,* Asst. Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

PRATT, Justice.

In 1917, our Workmen's Compensation Law was adopted, Laws 1917, c. 100. Section 52a, thereof, reads:

"Payments of compensation. *If a workman receives personal injury by accident arising out of and in the course of his employment,* his employer, or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified." (Italics added.)

The glossary, Sec. 52 in paragraph 5 thereof, included this:

"The words *'personal injury by accident arising out of and in the course of employment'* * * * shall not include a disease except as it shall result from the injury." (Italics added.)

In 1919, the Legislature amended Sec. 52a to read as it now reads, thus:

"3113. Payment of compensation. Every employe mentioned in Section 3111, who is injured and the dependents of every such employe who is killed by accident arising out of, or in the course of his employment * * *."

The defined phrase (in italics above) is no longer in the section.

The glossary paragraph and section was reenacted with the word "and" changed to "or," as it stands today (Laws of Utah 1919, c. 63, Sec. 3112 (5):

"The words *'personal injury by accident arising out of or in the course of employment'* * * * shall not include a disease except as it shall result from the injury." (Italics added.)

The Pinyon Queen Mining Company case, *Pinyon Queen Mining Co.* v. *Industrial Comm.* (cited in the former opinion as in 59 Utah 402, 204 P. 323, 325), was decided January 28, 1922. It interpreted the phrase "personal injury by accident arising out of or in the course of employment" etc., after the amendment of that phrase to its present wording. It held that its purpose was to eliminate occupational diseases. If the definition of a phrase which is no longer included in Sec. 52a, as amended (now Sec. 42-1-43 R. S. U. 1933), is of any efficacy at all, we see no reason for taking any other view of it than that adopted by this Court in the Pinyon Queen Mining Company case cited.

The brief amicus curiae filed in support of this petition for rehearing attacks our citation of certain cases including the Tintic Milling Company case, *Tintic Milling Co.* v. *Industrial Comm.* (60 Utah 14, 206 P. 278, 23 A. L. R. 325), and the *Young* v. *Salt Lake City* case (97 Utah 123, 90 P. 2d 174) as supporting the theory that the entry of the "bacillus enteriditis into the intestinal tract by way of the mouth was an accident. * * *" Counsel did not read very carefully. It is true that a question of what constitutes an accidental injury was discussed, but those cases were cited as proof that "an injury arising out of an accident is not limited in meaning to the result of *the application of physical force to the body of the injured."* [100 P. 2d 202, 204.] The reason for citing the Young case is specifically set out under question 1 of our original decision.

But as to the question of what is an accidental injury, eliminating any question of the application of physical force to the body: If the inhalation of gas (Tintic Milling Com-

pany case, supra, and Amalgamated Sugar Company case, *Amalgamated Sugar Co.* v. *Industrial Comm.*, 56 Utah 80, 189 P. 69) is an injury, is there any reason why the inhalation or swallowing of germs is not an injury? Surely no distinction is made on the ground that the former is a chemical reaction upon the tissues while the latter is a germ toxin reaction. Can calling an injury a disease defeat recovery of benefits? If a dormant germ is aroused to action by gas (Tintic Milling Company case, supra), is there something about that reaction which gives it preference over a case where the germ initiates its own activity? (This Andreason case). Are we going to end up undertaking a classification of germs by their activity or inactivity?

What, then, about a comparison of the unexpected (accidental) characters of the two? In the gas cases, the gas was known to be present. In the Tintic case the man entered deliberately and was gassed even though nothing went wrong with his respirator. It was held accidental. In the Amalgamated case the man sat down by the kiln, ate and then became sick. The dangers of the presence of gas were known. It was held accidental. But now counsel contends that in a case where the disease is extremely rare and little known, and certainly not within the contemplated possibilities arising out of such an occupation, it should not be held accidental. The writer cannot follow the reasoning. It is not a question of social justice, it is a question of being consistent with former rulings of this court.

Our attention has been invited to a recent Idaho case: *Hoffman* v. *Consumers Water Co.*, 99 P. 2d 919. There is no question but that case sets out a principle which, to be applied here, might require, for example, proof of an explosion of a bloated carcass throwing germs into Andreason's face. However, attention is invited to the concurring opinion of Mr. Justice Morgan, wherein he recognizes that a disease may be an accidental injury.

One question remains: Was there sufficient proof of the presence of germs at the plant where Andreason worked? If the disease were comparatively common and its sources of acquisition many, undoubtedly there would be a failure of proof here. But this disease is extremely rare and is connected almost entirely to diseased animals. Deceased was in constant contact with diseased animals at the plant, and nowhere else. The circumstances were such that the proof was practically as binding as if the germs were actually known to have been there. That tests were not made to ascertain their presence should not weaken the case. By the time it was ascertained from what Andreason died, the carcass containing the germs had probably been disposed of. If the disease were carried by rats, his possible contact with them was at the plant and not at home.

We have discussed this case rather thoroughly upon petition for rehearing, for we are aware of the possible misinterpretation that may be placed upon it.

The petition for rehearing denied.

MOFFAT, C. J., and LARSON, J., concur.

WOLFE and McDONOUGH, Justices.

We are of the opinion that the rehearing should be granted.