## SALT LAKE COUNTY v. INDUSTRIAL COMMISSION et al.

No. 6344. Decided December 29, 1941.   (120 P. 2d 321.)

168

See 71 C. J. Workmen's Compensation, sec. 929; 28 R. C. L. 794 (8 Perm. Supp. 6218.)

*Harold E. Walace* and *Walter M. Critchlow,* both of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., *Calvin Rampton* and *Zar E. Hayes,* Deputy Attys. Gen., and *William Reger* and *Elias L. Day,* both of Salt Lake City, for defendants.

WOLFE, Justice.

From an award by the Industrial Commission to Mrs. Mary A. Prowse for an accidental injury resulting in death to her husband allegedly received while in the course of his employment, employer Salt Lake County appeals.

John Prowse, husband of respondent, was employed by Salt Lake County, petitioner, as a helper on a gravel loading machine. While loading trucks for the County from the waste dump of the Maxfield Mine in Big Cottonwood Canyon in Salt Lake County, Prowse became ill on July 26, 1940, and subsequently died on August 2, 1940, of a disease diagnosed as Rocky Mountain spotted fever.

There is no question here as to the cause of his death, nor that hard-shelled ticks, dermacentor andersoni, carriers of Rocky Mountain spotted fever, are to be found throughout the Intermountain region. The sole question to be determined by this court is whether the evidence is sufficient to sustain the findings of the Commission that Prowse received the fatal tick bite during the course of his employment.

The record discloses the following:

That Prowse started work in Big Cottonwood Canyon on July 10, 1940, and continued to work five days a week at this locality until he was taken ill on July 26, 1940. He returned by car each night to his home at Lark, Utah. During this period, he was off work on the 13th, 14th, 20th, 21st, and the 24th day of July, 1940. On July 22nd, Prowse had stated to his foreman that something had "bitten him on the finger" and that he had "brushed it off." He had then wrapped a rag about the injured finger. It appears from the testimony of Mrs. Prowse that Mr. Prowse had not felt well for a few days previous to July 26th. That he had been irritable and grouchy. The evidence discloses that Prowse and his family had gone for an automobile ride up Little Cottonwood Canyon on July 4th, but due to the crowded conditions of the canyon they had returned to Union for their picnic, without stopping. That they had taken their children swimming at Saratoga on July 9th. Other than this, the Prowses remained at home during the month of July.

Four witnesses for respondent testified that they had seen wood ticks in Big Cottonwood Canyon although none were seen within three miles of where deceased worked. The foreman warned Prowse and the other employees of the possible presence of ticks. Although there is some conflict, two witnesses testified that Prowse hid the tools in a clump of brush by the side of the road each night and retrieved them the next morning by crawling into the brush. It further appears from the record that the mine dump was littered with rotten mine timbers and that foliage grew at the lower end of the dump where deceased worked part of the time.

Prowse died one week after he became ill on July 26th. He was hospitalized on July 29th, diagnosed as having Rocky Mountain spotted fever on July 31st, and died August 2, 1940.

Rocky Mountain spotted fever is a disease of man directly traceable to a deadly virus carried by infected wood ticks. These infected transmitting agents attach themselves to man by biting. The virus becomes reactivated within several hours after ingestion of blood in the tick has begun and it is then passed into the body of man. There are two types of infection in man, ambulatory and fulminating. Prowse was diagnosed as having the latter and more fatal infection. The period of incubation within man covers a period of from two to fifteen days depending upon the severity of the infection, the resistance of the man and the locality of the bite. In the cases of fulminating infections, the period of incubation is determined as from two to five days, the prodromal period is from two to three days in duration during which time the characteristic chilly sensations, backache, etc., appear. These sensations first appeared in the deceased on July 26th. Death occurs between the 9th and the fifteenth day following infection. It is not infrequent that the site of the tick attachment cannot be found. Medical science has some basis for the belief that the virus of an activated tick may enter through the pores of the skin.

Dr. McKay, appearing for plaintiff, testified that in his experience no tick has ever bitten a man on the hand, but that their tendency is to seek a locality on the body where they are not so apt to be brushed off.

The Commission found that Prowse was bitten by a tick in July, 1940. Plaintiff concedes that such an inference is permissable but questions the permissability of the inference drawn by the Commission that the biting tick was picked up in Big Cottonwood Canyon during the course of his employment on the ground that such is mere surmise, conjecture, guess or speculation.

The only direct evidence of a bite appears in the testimony of deceased's foreman that the deceased had complained to him of a bite on his ring finger on July 22, 1940. This evidence is put in conflict by the testimony of Dr.

McKay who stated that in his experience no man has been bitten on the finger by a tick.

We have many times affirmed the principle that it is not our duty to say what inference or conclusion we would have drawn from facts presented to the Commission. *Kent* v. *Industrial Commission*, 89 Utah 381, 57 P. 2d 724; *Utah-Idaho Central R. Co.* v. *Industrial Commission*, 71 Utah 490, 267 P. 785; *Continental Casualty Company* v. *Industrial Commission*, 75 Utah 220, 284 P. 313.

"Our duty is to examine the record and, unless we can say that as a matter of law the conclusion of the Commission on the question of 'course of employment' was wrong because only the opposite conclusion could be drawn from these facts to affirm." *Wherritt* v. *Industrial Commission*, 100 Utah 68, 110 P. 2d 374, 376.

Appellant contends that there are situations where even though an opposite conclusion cannot be drawn, the Commission cannot conclude that the accident arose in the course of the employment. This is the situation where the Commission cannot from all the facts infer the ultimate fact that the accident occurred in the course of the employment with any more probability than that it occurred outside of the course of employment. "To infer" means "to bring into, to bring forward," Webster's International Dictionary, Second Edition. The very process of inference involves the process of one fact or a set of facts pushing forward in the mind the probability of the inferred fact. Sometimes the basic fact or facts from which the inference arises strongly urge to any reasonable mind the inferred fact. At other times, the process of inference is more tenuous. And, true it is, that where the fact attempted to be inferred is pushed or carried out of the basic facts with no more urgency than some other fact, the inferences are said to be equal and cancel each other. Perhaps the more accurate way to state the proposition is that the mind in its natural functioning does not bring forward any fact from the underlying facts because, being in a condition of equipoise, no inferable fact is brought forward or pushed

out of the underlying facts as a natural conclusion. The question arises, have we such a situation in this case?

Plaintiff urges that the stipulation to the effect that wood ticks are found in the entire intermountain region, plus the fact that Prowse lived at Lark, Utah, and went on a picnic at Union and swimming at Saratoga, Utah, all of these points being in the intermountain region, ■ puts the mind in a condition of equipoise as to the event of the accident at which it must remain. But the stipulation that ticks are found in the entire intermountain region cannot be construed to be a stipulation that they are found in equal abundance all over the region, nor that the facilities for Prowse contacting them were equal in all the places he chanced to be in the intermountain region during any possible period of incubation.

The facts were that Prowse's work took him into brush to an extent not ordinarily to be expected while at home, swimming, or even on a picnic. Moreover four witnesses testified to the actual presence of ticks at a point three miles from where Prowse worked. The conditions that existed in the locality where the witnesses saw the ticks were practically the same as the conditions at the place where deceased worked.

In view of the stipulation and the testimony of these witnesses, we can assume that there were ticks where Prowse worked and thus tending to show the actual presence of ticks in the locality of Prowse's work in contradistinction to the entomological fact which we all know that ticks exist throughout the intermountain region. But one further potent piece of evidence is sufficient in view of the evidence just recited to throw the mind off equipoise. It has been established that in cases of fulminating infection the period of incubation is from two to five days. Here Prowse became ill on July 26, 1940, the period of incubation extending back to the fifth day from that date, or to July 22, 1940, the date on which Prowse complained of a bite. During this period he was off work on July 24th, a holiday. From

the record it appears that he remained at home in Lark on this day. The remaining days during this period of incubation he spent in Big Cottonwood Canyon returning home by automobile at the end of the working day.

There is nothing appearing of record which is intrinsically discrediting to the uncontraducted testimony of the witnesses nor is such testimony wholly from interested witnesses. Further, the evidence as appears in the record not only carries "a measure of conviction" to the reasonable mind but is sufficient to throw the mind off equipoise, raising the inference that the deceased picked up the tick in the course of his employment. *Norris* v. *Industrial Commission*, 90 Utah 256, 61 P. 2d 413, 415; *Adams* v. *Industrial Commission*, 95 Utah 507, 82 P. 2d 693; *Andreason* v. *Industrial Commission*, 98 Utah 551, 100 P. 2d 202, rehearing denied 98 Utah 561, 102 P. 2d 894.

In the Idaho case of *Nelson* v. *Tesemini Lumber Protective Association*, 59 Idaho, 529, 84 P. 2d 566, it was held that testimony showing that the deceased worked in a locality where ticks could be found at such time as would be consistent with incubation, was in itself sufficient basis for an inference.

The following tick cases are not in point here for the reason that in each case there was definite evidence of a tick bite during the course of employment. *Renoehl* v. *Hamacher Pole & Lumber Company*, 51 Idaho 359, 6 P. 2d 860; *Roe* v. *Boise Grocery Company*, 53 Idaho 82, 21 P. 2d 910; *Smith* v. *McHan Hardware Co.*, 56 Idaho 43, 48 P. 2d 1102; *Long* v. *State Insurance Fund*, 60 Idaho 257, 90 P. 2d 973. In the case of *Vaughn* v. *Robertson & Thomas*, 54 Idaho 138, 29 P. 2d 756, a decision denying compensation was affirmed on the ground that there was no evidence as to the period of incubation nor of the whereabouts of the deceased prior to his final illness.

*Pace* v. *Industrial Commission*, 87 Utah 6, 47 P. 2d 1050, is a case where the Commission held that there was no evidence to show that the infection, the port of entry of which

was in the blister and which was the accident, had occurred in the course of employment. Had the Commission in that case granted an award we would then have had the same question we have in the instant case that is as to whether there was any evidence to support a holding that the accident occurred in the course of the employment.

The case of *Russell* v. *Industrial Commission,* 86 Utah 306, 43 P. 2d 1069, is similar to the Pace case. In that case also the Commission denied the claim.

In the Andreason case, supra, wherein an order denying an award was reversed by this court, we have a more definite and clean-cut connection between the cause of disability and the nature of employment; further, all outside opportunities for contracting the disease were negatived.

If the Commission had denied an award in the instant case, we would of necessity have had to uphold it for we could not have said as a matter of law that the Commission erred; however, having granted an award, we conclude that there is sufficient, competent, material evidence appearing of record to support the finding of the Commission that the biting tick was picked up by the deceased during the course of his employment. The period of incubation involved in this case articulates with the probability that the tick bite occurred while he was at work and does not articulate with the dates he went on a picnic or went swimming. This is a distinct feature sufficient to eliminate those latter times as the occasion for the bite and connect it up with the course of his employment.

The award of the commission is affirmed with costs to respondent.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.